1832.

Hart
v.
Mayor, &c.
of Albany.

## HART & HOYT *vs.* THE MAYOR, ALDERMEN AND COMMON-ALTY OF ALBANY, and BROWN.

An appeal from the decision of the chancellor denying an application for an injunction, or for an order to stay proceedings in another suit, does not operate as an injunction or a stay of such proceedings pending the appeal.

Neither does an appeal from an order dissolving an injunction suspend the operation of the order so as to entitle the appellant to stay the proceedings, pending the appeal, as a matter of right.

Where an appeal from an order dissolving an injunction involved an important question of right between the parties, and there was probable cause for appealing, and no particular injury could arise to the respondents from the delay, the court, after hearing both parties upon the application for such relief, granted a temporary injunction, restraining the further proceedings of the defendants in relation to the subject matter of the first injunction, until the appellants had a reasonable time to be heard before the appellate court.

FROM the decision of this court dissolving the injunction in this cause, (*ante, p.* 213,) the complainants appealed to the court for the correction of errors. The defendants, pending the appeal, were proceeding to carry into effect the ordinance of the corporation, by removing from the basin the ark, or floating store house, referred to in the bill. To effect this object it would be necessary to destroy the store house by taking it to pieces. The complainants presented a petition to the chancellor, stating these facts; and also stating that the appeal was brought in good faith, for the purpose of settling the rights of the parties; that the destruction of the ark or store house would be a very serious injury to the complainants, if they succeeded in their appeal; but that it could not be of any material damage to the defendants or the public to have it remain in its present situation until the decision of the court of errors upon the questions in controversy between the parties. The petitioners therefore asked for an order restraining the defendants from proceeding under the ordinance of the common council pending the appeal.

*A. Van Vechten & J. L. Viele*, for the complainants.

*J. McKown & J. King*, for the defendants.

July 3.

Hart
v.
Mayor, &c.
of Albany.

THE CHANCELLOR. It is supposed by the complainants' counsel that the appeal from an order dissolving an injunction has, under the provisions of the revised statutes, the effect of nullifying the order pending the appeal, so as to prevent the dissolution of the injunction, and to deprive the defendants of the right to go on with their proceedings under the law of the corporation, or to do any act contrary to the prohibition contained in the injunction. But if they should be wrong in their construction of the statute, the complainants then ask the court to exercise a judicial discretion, under the peculiar circumstances of this case ; and that they may have an order, in the nature of a temporary injunction, to stay the proceedings of the defendants pending the appeal, so as to give the appellants the benefit of the decision of the court for the correction of errors, if it should be in their favor.

Previous to the passing of the revised statutes it had been decided, both in the supreme court and in this court, that an appeal from an order dissolving an injunction could not of itself affect the validity of the order, or revive the process pending the appeal, so as to prevent the respondent from proceeding in the same manner as if no injunction had ever been granted. (*Hoyt* v. *Gelson & Schenck*, 13 *John. Rep.* 139. *Wood* v. *Dwight*, 7 *John. Ch. Rep.* 295.) But it is supposed that the eighty-ninth section of that article of the revised statutes which relates to appeals from the court of chancery, &c. (2 *R. S.* 607,) has altered the law in this respect. That it has placed it in the power of a party who has obtained a preliminary injunction by an ex parte application to an officer out of court, to continue that injunction in full force, by simply appealing from an order of the court directing its dissolution. If such should be found to be the true construction of the statute, it would become absolutely necessary, to prevent the greatest injustice to parties, to change the practice of this court in relation to the granting of injunctions on an ex parte application to the court, or to an officer thereof. But according to the construction of this section of the statute as contended for by the counsel in another case that is now pending before me, even a change in the practice of the court could not remedy the evil. For it is there insisted that an appeal from

an order or decision of the court refusing to grant an injunction gives to the applicant the full benefit of an injunction pending the appeal; and restrains the adverse party from proceeding in any other suit, or otherwise, in relation to the subject matter sought to be affected by the injunction or order which was prayed for and refused. I am satisfied, however, that neither of these constructions of the statute were ever contemplated by the revisors who proposed this provision, or by the legislature which adopted it.

To understand the meaning of the several provisions of the revised statutes relative to the stay of proceedings pending an appeal, it may be necessary to inquire what was the former law and practice of the courts on this subject, and what were the evils intended to be remedied by these legislative provisions. It will be recollected by those who have had occasion to look into the history of the jurisdiction of the house of lords in England, relative to appeals from the court of chancery, that their jurisdiction was for a long time contested, not only by the house of commons, but by several distinguished English judges. And the learned Chief Justice Hale wrote a very elaborate treatise for the purpose of showing that the lords could not rightfully exercise such a jurisdiction. In this struggle to obtain or preserve jurisdiction in cases of appeals, it will be found, on examination, that very little regard was paid to the rights of suitors, or of their counsel; some of whom were heavily amerced, and even imprisoned, for questioning the jurisdiction of the lords, or for refusing to appear as counsel in that court. During this contest, it was a matter of course that the lords, for the purpose of sustaining the jurisdiction which they claimed, should prohibit the respondent from taking any steps in the cause, in the court of chancery, pending the appeal; whatever injury he might sustain by the delay. Hence it became the law of the appellate court, that the mere presenting an appeal to the house of lords, suspended all proceedings whatever in the court below. And so far was this principle carried, that as late as 1772 it was supposed that an appeal had the effect of totally suspending the jurisdiction of the lord chancellor as to the whole suit, until the decision of the lords on the appeal. But in the case of *Lord Pomfret* v. *Smith*,

which came before Lord Apsley at that time, he decided that his jurisdiction was suspended only as to the matter appealed from ; but that it was not totally suspended, so as to prevent a proceeding as to any other matter in the cause. (*Palmer's Pr. H. of L.* 9.) The jurisdiction of the lords being finally established, and having remained for a long time undisputed, they saw the necessity of permitting the court of chancery, during the recess of parliament, to take such proceedings in the cause, pending the appeal, as the lord chancellor might deem requisite for the preservation of the rights of the parties. At length this practice became so fully established, that in the case of *Burke* v. *Brown,* in 1807, (*Palmer's Pr.* 10, 15 *Vesey,* 184,) the lords decided that an appeal did not stay any of the proceedings, even upon the point appealed from, without an express order of the appellate court ; unless the lord chancellor, in the exercise of a judicial discretion, thought proper to suspend the proceedings wholly or in part pending the appeal. This country having separated from England before this change in the practice had been established, the courts of this state followed the practice, as settled by Lord Apsley, in 1772, of considering the appeal as a stay of the proceedings upon the point of the appeal. The same reasons, however, which had produced a change in the practice in England, caused a modification here, so as to make the appeal only a stay of the proceedings in the first instance, subject to the right of the respondent to apply to the chancellor for leave to proceed notwithstanding the appeal. (1 *John. Ch. Rep.* 77. 3 *Idem,* 66.) The only difference, therefore, between the practice here and in England, at the time of the adoption of the revised statutes, was, that in England the appellant was compelled to obtain an order to stay the proceedings in the suit as to the matter of the appeal ; but here the application came from the respondent, to be permitted to proceed notwithstanding the appeal. One of the evils of our practice was, that the appeal suspended the proceedings in all cases, in the first instance, without giving to the respondent any adequate security for his debt or costs. Another was, that the chancellor possessed an unlimited discretion, and might deprive the appellant of the benefit of his appeal, in any case, by permitting the respondent to proceed and enforce

1832.

Hart
v.
Mayor, &c.
of Albany.

the order or decree of the court below, before the appellant could obtain a hearing before the court of dernier resort. The object therefore of the revisors, was to take from the chancellor, in all cases where it could be done without injury to the rights of suitors, the discretionary power of permitting the party to proceed in the suit notwithstanding the appeal, and at the same time to furnish to the respondent an adequate remedy against the injurious consequences of the delay. But it was not their intention to make the appeal a stay of proceedings in any case where by the former practice of this court it was not a stay of the proceedings in the first instance ; or to extend it to any other proceedings of the respondent, except his proceedings in the court of chancery and in that suit. The 89th section of the statute, under which the appellants suppose they have the right to stay the proceedings of the defendants under the ordinance of the common council, follows the several provisions requiring security for debt and costs to make the appeal a stay of proceedings ; and is in these words : "In all other cases not herein before provided for, the filing and perfecting of an appeal by giving bond for the payment of costs thereon, shall stay all proceedings in the court of chancery, upon the order or decree appealed from, *and upon the subject matter thereof*," &c. It is under this last clause of the section that the appellant claims the right to have all proceedings upon the subject matter of the order, in the court of chancery or *elsewhere*, stayed. But by referring to the analogous provision in the 86th section, it will be seen that this language was probably used to distinguish the subject matter which formed the point of appeal from other matters embraced in the bill, as to which other matters the proceedings in this court were not to be stayed by the appeal ; and thus to bring the stay of proceedings within the principle of the decision of Lord Apsley, in the case of *Lord Pomfret* v. *Smith*, in 1772, to which I have before referred. By the express terms of the statute, the stay of proceedings is confined to proceedings in the court of chancery, upon the order or decree, and upon the subject matter thereof ; and, as I understand the provision, to proceedings in the suit in which such order or decree is made.

VOL III.. 49

Having arrived at the conclusion that the provisions of the revised statutes do not suspend the operation of the order appealed from, so as to restore the injunction and entitle the appellants to an order to stay the proceedings of the defendants as a matter of strict right, it becomes necessary to enquire whether this court has the power to suspend the operation of the order until the decision of the court for the correction of errors on the appeal; and if it has such power, whether this is a proper case for the exercise of the judicial discretion of the chancellor in this respect. As the application here is, not to stay any proceeding in the suit, but to restrain a proceeding by the defendants out of court, the granting of the order will unquestionably be an original exercise of judicial power over the parties in the cause. Such power, however, is frequently exercised by the superior courts over the suitors and parties therein, for the advancement of justice; and the granting a preliminary injunction in this court, before the rights of the parties are finally determined, always proceeds upon the same principle. The only reasonable ground of objection to such a proceeding therefore is, that it seems inconsistent for the court to make an order to restrain a party from proceeding, after it has, upon a full hearing of both parties, decided that he has both a legal and equitable right to proceed. But this objection would equally apply to all the orders in the English court of chancery to stay the proceedings on a decree or order of the court by which the rights of the parties had been established by the same court. In the case of *Lewis* v. *Morgan*, (5 *Price's Rep.* 468,) although it was admitted that applications of this kind were not to be encouraged, the court of exchequer in England suspended the proceedings under an order of that court, for a limited time, to enable the party against whom the order was made to bring the case before the house of lords by appeal. I am aware that many frivolous and vexatious appeals are brought, especially from the decrees and orders of the vice chancellors, for no other object than delay, or to harrass an adversary, or to compel him to submit to some terms of compromise. And I admit that such appeals are not to be encouraged by granting a stay of proceedings in cases not already provided for by the provisions of the statute.

This case, however, does not appear to be of that description; and if the decision of this court was wrong, it may prevent an unnecessary sacrifice of property, and save future litigation, to restrain the defendants from proceeding until after the next session of the court for the correction of errors. If therefore the complainant's solicitor will stipulate to expedite the proceedings on the appeal, so as to enable the respondents to bring the same to a hearing at the next August term of that court, a temporary injunction must be granted, restraining the defendants from destroying the ark or store house, or from taking it to pieces or removing it from the basin, until after the session of the court for the correction of errors in December next; unless the appeal shall be sooner dismissed or otherwise disposed of by that court.