## TONE *vs.* BRACE.

The words *demise* and *lease* in a lease, import a covenant for quiet enjoyment by the tenant of the demised premises ; and the 140th section of the Revised atatutes in relation to alienation by deed, does not abolish implied covenants in leases for years.

A tenant who is sued for rent, cannot set up the damages incurred by a breach of an implied covenant for quiet enjoyment by way of set off, but whether he can avail himself of it by way of *recoupement* or diminution of damages, in a suit at law, *quære.*

A tenant who is sued at law, upon his covenant to pay rent, and has a claim against the landlord for a breach of an independent covenant in the same lease, cannot bring the matter into Chancery merely because the landlord is a resident of a sister state ; but if the landlord is a non-resident and insolvent, it is sufficient to make the whole matter a proper subject of the jurisdiction of the court of Chancery.

This court has the power to reinstate or renew an injunction after a dissolution, even though the order of dissolution has been affirmed by the Chancellor, upon appeal, and an appeal has been taken from the Chancellor's decision to the court for the correction of errors ; but this power will not be exercised except in extreme cases, and upon new facts presented, either by petition or supplemental bill.

When an injunction has been dissolved, and subsequently proofs have been partially taken, but no order has been entered to close proofs, the injunction will not be revived merely because the proofs, so far taken, falsify the answer, especially if the proofs only go to establish the original charges in the bill, fully denied by the answer, and present, not new facts, but merely additional testimony.

THE defendant who was owner of a farm in Genesee county, demised and leased the same to the complainant, for five years from the first day of April, 1837, at an annual rent of $550, payable on the first day of January, in each year, during the continuance of the term, and with the farther privilege of sowing on the farm an out going crop of wheat, not exceeding fifty acres, and of removing and harvesting such crop, notwithstanding the five years had expired.

The complainant went into possession by himself or his tenant, and paid the rent for the first two years, and in the fall of the third year he put in a crop of forty-three acres of wheat, which was growing upon the land at the time of his eviction, as hereafter mentioned. At the time of the giving of the lease, there was a mortgage upon the farm, which was afterwards foreclosed in Chancery ; and a few days after the rent for the third year became due, the complainant, Tone, the lessee, was evicted by the decree of that court under a sale by a master ; the rent for that year being due and unpaid. The defendant, Brace, the lessor, who had in the mean time left the state, and removed to Michigan, afterwards commenced a suit in the Supreme Court to recover the third year's rent. Before the cause was at issue, the complainant filed his bill in this court, alleging that he had sustained a loss by reason of the eviction, of at least five hundred dollars, exclusive of the damage which he would sustain by being deprived of the privilege of putting in the out-going crop, according to the terms of the lease, which he averred would be at least three hundred dollars more. The bill also stated that the defendant was insolvent, and sought to restrain the suit at law until the complainant could ascertain the damages, by reason of his eviction, and to have such damages ascertained as a set off to the defendant's claim for rent. The lease contained no covenant for quiet enjoyment, except such as might be implied from the terms *demise* and *lease* used therein. Upon filing the bill, an injunction was allowed, restraining the defendant from proceeding at law to enforce the payment of the third year's rent, except so far as to proceed to trial and

judgment. When the defendants answer was put in, a trial at law had been had and judgment rendered against the complainant, notwithstanding his defence at law, for the amount of the third year's rent. The answer denied the insolvency of the defendant; and upon the coming in of that answer, the injunction was dissolved by the Vice Chancellor in August last. From this decision an appeal was taken to the Chancellor, who affirmed the order of the Vice Chancellor. An appeal has been taken from this last decision, to the court for the correction of errors.

While the appeal was pending before the Chancellor, an order to produce proofs was entered, and the complainant has examined two witnesses to show that Brace, the defendant, was insolvent at the time of filing the bill, and is now insolvent. The order to produce proofs has not yet expired. The complainant now presents a petition, stating that Brace was, at the time of filing the bill, and now is, insolvent; and asks to revive the injunction, or at least for an order to stay the defendant's proceedings upon his execution at law, until the decision of the appeal by the court for the correction of errors. Attached to his petition, are the depositions of the two witnesses already examined in the cause, and also several *ex parte* affidavits, showing that Brace is insolvent. The defendant objects to the reading of either the depositions or the affidavits.

*J. W. Gilbert,* for complainant.

*C. M. Lee,* for defendant.

THE VICE CHANCELLOR. This case was before

Tone
v.
Brace.

Mar. 1841. me in August last, upon a motion to dissolve the injunction. It was then briefly argued, and the opinion directing the dissolution of the injunction was briefly expressed, and put upon the ground that if the complainant had any remedy upon the covenants of his lease, he had an adequate remedy at law, and could not come here unless the defendant was insolvent; which was denied. (*Ante*, p. 291.)

The complainant, in his argument upon this petition, has gone into the whole merits of his case, and the original right to an injunction in this suit, and the eventual right of final relief in this court, if the present aspect of the facts remains unchanged by proof. The words used in this lease by the defendant in the granting part, are *demise* and *lease*. Under the settled rules of law, previous to the enactment of the Revised Statutes, it must be conceded, and it seems to be conceded by the defendant's counsel, that these words are sufficient to imply a covenant, so that the lessee, upon an eviction before the expiration of the term, could upon them maintain an action for his damages, by reason of such eviction. Grannis vs. Clark, 8 Cowen, 36; Barney vs. Keith, 4 Wendall, 502. And the complainant insists that this settled rule of the common law is not altered by the 140th section of the Revised Statutes, relative to alienation by deed. That section (1 Rev. Stat. p. 731) declares that " no covenant shall be implied in any con- " veyance of real estate, whether such conveyance " contain special covenants or not." The Supreme Court have held, in the case of Kinney vs. Watts, 14 Wendell, 38, that this section, connected with the definitions given by the statute itself to the terms used, is applicable to implied covenants in leases, as

well as in other conveyances. The Revised Statutes, in the general provisions at the close of many of its chapters, give a definition to the terms used in such chapters; and such definition is frequently limited to such chapter. And in other chapters a different definition is given to the same words, for the purposes of such other chapter. In this case, the 140th section above quoted, is contained in the *first* chapter of Part 2. As to this chapter, the word "conveyance" is not defined by the statute itself; but in Title 5, Sec. 10, of the same chapter, we find a definition given of the term "real estate" as follows: (1 Rev. Stat. p. 741.) "The terms 'real estate' and "lands" as used in *this chapter*, shall "be construed "as co-extensive, in meaning, with lands, tenements, "and hereditaments." Chapter 3 of Part 2 of the statutes is the recording act, and the same terms in relation to real estate, are there also used; and the terms "purchaser" and "conveyance" are there defined, and so is the term "real estate;" but the definition of the latter term is different from that in Chap. 1, (1 Rev. Stat. p. 751, Sec. 36,) and is as follows: "The term 'real estate,' as used in *this* "*chapter*, shall be construed as co-extensive in mea-"ning with land, tenements, and hereditaments, and "as embracing all chattels real, except leases for a "term not exceeding three years." It will be perceived that this definition applies only to Chap. 3; and that it is different from the definition of the same term applied to Chap. 1. Yet it is remarkable, that the Supreme Court, in the above case of Kinney vs. Watts, have applied the definition attached to Chap. 3, to show the construction and import of a section in Chap. 1, and to show that the 140th sec-

tion of Chap. 1 repudiated implied covenants in leases. This is an obvious error and misapplication. Yet it does not therefore follow that they have not given that section the proper construction. It is to be remarked that the 4th article of Title 2 of Chap. 1, is entitled " Of alienation by deed"—that Title 4 of the same chapter, is headed " Of estates for years and at will," &c.—that as to this chapter, the term " conveyance" is not defined—and that the definition of " real estate" in this chapter, does not embrace "chattels real." It is to be remarked, also, that the 139th section of Art. 4, (1 Rev. Stat. p. 731,) specifically repudiates implied covenants in mortgages. We then turn to the reviser's notes upon this article, and we there see that they reported two sections there marked 172 and 173, (3 Rev. Stat. 594,) which were not enacted. We see that the revisers explained these sections, by stating what the law then was as to implied covenants in conveyances of the *fee,* and suggesting that *such* implied covenants (to wit, implied covenants in conveyances of a fee or freehold) ought to be entirely abolished or their consequences declared, by enactment. We see, farther, that this 140th section was inserted by the legislature in pursuance of this suggestion ; by which we infer that, instead of tracing out implied covenants in the conveyances thus spoken of, they intended wholly to abolish implied covenants in that kind of conveyances which was then under legislative consideration. It is true, that the notes of the revisers are hardly legitimate exponents of what was the legislative will ; but when the construction of a legislative enactment so enacted, and after such a revision, is doubtful, such notes may properly and profitably be referred

to, with a view of truly ascertaintng the legislative
intent.

In looking at all these circumstances to which allusion has been above made, I am strongly impressed with the conviction that the legislature, in the whole of Art. 4, Title 2, had only in contemplation conveyances of a freehold. This view comports with the heading of the article, " Of alienation by deed," which, in the popular construction of the term, at least, contemplates when so used, conveyance of only a freehold. This view comports with the provision as to mortgages, in the 139th section, which case the legislature supposed might not be reached by the language of the 140th section, unless it was specially enacted. The 145th section may seem, to some extent, to conflict with it, where the word " conveyance" is used, so that it will eventually carry a chattel interest; but it seems to be used in this section in a case where, upon the face of the instrument, purported to convey a freehold, while the grantor had only a chattel interest, which interest should in such event vest in the grantee. The fact, also, that a subsequent title in the same chapter, relates to estates for years, where provisions as to covenants in leases would find an appropriate place, seems to aid the views above expressed ; and the notes of the revisers, likewise, give them strong countenance.

It would hardly afford any considerable aid to either side of the argument, to go into a nice criticism of the import of the terms " conveyance," " tenements," "lease," or any other terms used in the chapter, and which are not defined. Legislative bodies generally use language and terms in the sense that such terms are commonly used, without reference to

any erudite or far fetched constructions. Upon the whole, I have from examination, and that contrary to my first impression, imbibed the strong conviction that the legislature did not intend, by the language used in the 140th section, to prohibit implied covenants in leases for years. This conclusion of course leads to the consequence that the complainant has a remedy upon the implied covenant in his lease, to recover damages for his eviction, of the defendant. But we must examine farther, to determine whether that fact will aid him in this court, and particularly upon this motion. Such remedy, if any exists, would be a remedy at law; but, notwithstanding this, the complainant insists that he has no adequate remedy at law.

It appears to be a well settled rule at law, that the taking possession under a lease, creates a tenancy, and subjects the tenant to the payment of rent; and that the tenant cannot set up any damage which may have accrued to him from a breach of his landlord's agreement, as a *set off*. 4 Wendell, 505; Allen vs. Pell and Lester, 12 Wendell, 529; Ethridge vs. Osborne, 15 Weneell, 559; Sickles vs. Fort. The tenant must resort to the covenants in this lease, by a cross action against the landlord, and cannot *set off* the damages arising out of the breach of such covenants.

But though such a claim is not admissible as a technical *set off*, yet the courts seem to have held that in certain cases and upon proper notice, it might be admitted as a *diminution of the damages* of the plaintiff. McAllister vs. Reab, 4 Wendell, 483. Same case in Error, 8 Wendell, 109. That was a case of warranty of a chattel, and the damages upon the

warranty was permitted to be set up in an action for
the contract price of the chattel. In Ives and Mc
Carty vs. Van Epps and Shattuck, 22 Wendell, 155,
the Supreme Court carried this principle into the case
of a sealed instrument ; but it does not distinctly ap-
pear from the facts in that case, whether the cove-
nants were dependent or independent. The broad
ground of natural equity would seem to justify the
application of such a principle, whenever it could be
done consistent with the settled rules of law, so that
claims arising out of the same transaction and by
reason of the same instrument, should compensate
each other, and the balance only be recovered. This
would prevent litigation and circuity of action, and
make the road shorter and cheaper to the final attain-
ment of substantial equity and justice. In my ap-
prehension, it would be desirable and equitable to
find such a doctrine established as a settled principle
of common law jurisdiction, in cases to which it is
not now supposed to extend. It would prevent many
applications to the court of Chancery, and give equi-
table relief through the medium of courts of law, at
much less expense both of time and money. If the
rule is applicable to a case like this, the complainant
might have availed himself of it at law. It does not
appear from the papers what was the character of
his defence at law, and we cannot therefore know
whether the defendant was negligent in failing to
present that which might have availed him there.
At any rate, the complainant, if he had a remedy at
all upon the covenants in his lease, had a remedy at
law, either by action upon the implied covenant, or
by *recoupement* of the damages arising by reason of
the breach of it. And it is a settled principle of this

Mar. 1841.

Tone
v.
Brace.

court, if the party has an adequate remedy at law, this court will not assume jurisdiction. The only facts stated in the bill which show or have a tendeny to show that the complainant's remedy is *inadequate* at law, are the non-residence of the plaintiff at law, and the defendant in this suit, and his insolvency. Non-residence, of itself, is not a sufficient fact alone, to justify the interference of this court. Murray vs. Toland and Mead, 3 Johns. Chan. Rep. 569. Non-residence and insolvency would be sufficient; and if the proofs of the defendant's insolvency appeared upon the first motion to dissolve the injunction, by affidavits attached to the bill, or in any other proper way, as strong as they do now, contradicted only by the answer of the defendant, the injunction would have been retained. So far I have considered the case as upon an original application for an injunction upon bill and affidavits, denied only by the single answer of the defendant.

It is necessary now to look at the case as it is in point of fact presented. The bill alleged the insolvency of the defendant—that was the only ground upon which the injunction was allowed, and the only ground upon which it could be retained. The answer denied this, and the injunction was consequently dissolved. The order of dissolution was affirmed on appeal, by the Chancellor, and from that an appeal has been taken to the court for the correction of errors. In the mean time the complainant has examined two witnesses, and produced several affidavits disproving the truth of the answer; and moves upon them to revive the injunction so dissolved.

The power of this court to make an order in effect reviving an injunction dissolved by itself, and the or-

der of dissolution appealed from, was examined in the case of Jewett and others vs. The Albany City Bank. (*Ante*, 59.) It was there held that though the order to dissolve the injunction was appealed from, and all questions connected with that order had passed from the jurisdiction of the Vice Chancellor, yet, as the general papers in the cause and the cause itself still remains with the Vice Chancellor, he had authority to exercise power over the suitors in the cause still before him, for the advancement of justice. In that case, like this, the order was applied for upon the facts elicited upon the taking of proofs in the due course of the cause, but the motion was there denied. That decision was supposed to be in conformity with the principles established by the Chancellor, in the case of Hart vs. The Mayor of Albany. (3 Paige, 381.) I have, therefore, no doubt of the power of this court to grant an order to restrain the defendant from enforcing his execution at law, if a proper case is presented for its exercise. Whether this case is a proper case, is a graver and more important question. Suppose I lay out of view in this cause, the fact that an appeal has been taken and undecided, and look at this case as if the order of this court dissolving the injunction, had not been appealed from. I can find no precedent for renewing an injunction after a dissolution, upon facts similar to those presented by the present case. The power of the court to reinstate or renew an injunction, is, however, beyond question, where a proper case is presented. As a general rule, however, an application for this purpose should present some new facts, giving reasons not assumed in the original bill. Such application may be made by supplemental bill, or by

65

petition, according to the necessities of each case. In Livingston vs. Gibbons, (5 Johns. Chan. Rep. 250,) the application was by petition; and the prayer of it was denied, because it did not state some new and special reasons arising after the dissolution. In Fanning vs. Dunham, (4 Johns. Chan. Rep. 35,) the application was by supplemental bill, stating new facts; and an injunction was allowed, although a former injunction had been dissolved upon the merits. In Bloomfield vs. Snowden, (2 Paige, 355,) there was an application by petition; which was denied, because new parties were brought in, and it was suggested that a supplemental bill was necessary; and also it was decided that upon filing such supplemental bill, notice of the application should be given to the opposite parties. (See also, Lowrey vs. Mc Gee, 5 Yuger, 238.) The point which was considered essential in all these cases, was the proper presentation of some new facts to authorise the revival of the injunction. Indeed, the court would hardly hear again a motion which they had once decided, upon the same facts, or upon facts which the party should have known at the time of the first motion. The only case at all analogous to this, is that of Hart vs. The Mayor of Albany, (3 Paige, 381,) before cited. That was a petition to the Chancellor, after a dissolution of the injunction by him, stating that an appeal was made in good faith, to the court for the correction of errors; and that if the property, the subject matter of the controversy, was destroyed, it would be of serious injury to the petitioners; whereas its preservation until the determination of the appeal, would be no injury to the other party; and an order to stay the destruction, was allowed upon terms. In

the case before us, the appliction is based upon the
ground that the denial of insolvency in the answer of
the defendant, is falsified by the proofs produced. I
had occasion, in the case of Jewett vs. The Albany
City Bank, before cited, to glance at the consequen-
ces and effect of admitting such applications upon
such grounds. The petition was there rejected,
though an injunction was afterwards allowed in the
same case (*ante*, 241); but it was so allowed upon
facts subsequently happening. Upon the first ap-
plication the proofs had been closed, and the defen-
dants had no opportunity to introduce farther rebut-
ting proofs, and the application was made upon such
proofs. Here, the order to produce proofs has not
been closed—the complainant has examined two wit-
nesses, and the defendant, none. What proofs he
will be able to show, we do not yet know. The
petition states that the defendant was insolvent at
the time of filing the bill, and still continues so. This
is no new fact. It was the original charge in the bill.
It has been answered and decided upon. If there is
any new fact presented here, it is merely the proof
of the defendant's insolvency, cumulative of that pre-
sented on the former motion. The ground of the
bill is the same, and nothing has occurred since to
change the position of the parties, except the acqui-
sition of proof by the complainant. If the applica-
tion in this case is to be allowed upon the depositions
taken before the examiner, and that, too, before the
proofs are closed, I cannot see where it will end.
The complainant obtains proofs, and obtains an or-
der upon them to revive the injunction. The defen-
dant then obtains over balancing counter proofs, and
upon that the injunction is again dissolved. And so

Mar. 1841.

Tone
v.
Brace.

the orders may alternate to and fro, during the whole period of the continuance of the examination of the witnesses. This can hardly be tolerated. The complainant also insists that his *ex parte* affidavits should be taken into account ; and as they are not answered by affidavits rebuting their allegations, they must be taken as true. The defendant supposes, that inasmuch as these affidavits could not be read in opposition to the motion to dissolve, that they cannot be heard here ; and that, together with the fact appearing upon the pleadings, that the defendant resides in Detroit, may perhaps be a sufficient excuse for not furnishing counter affidavits upon this motion. The facts presented in the depositions and affidavits, if true, would convict the defendant of perjury in his answer. That, unquestionably, if established, would be such a fraud in procuring the dissolution, as would of itself entitle the complainant to an order to revive the injunction. But I hardly feel justified in coming to such a conclusion, when the testimony is only partially taken. If the proofs were now closed, it might be sufficient ; but I deem it a dangerous precedent to allow motions of this kind, founded upon proofs partially taken.

I shall, therefore, deny the prayer of the petition, with costs to be taxed.

As, however, the case presents perhaps a new point in practice, and as the complainant can have no redress if I am wrong, except by an appeal from this order ; and before an appeal could be perfected and decided, the defendant would have collected the amount of his judgment upon the execution, and then a reversal of this order would be fruitless to the complainant, I am willing to give the complainant an

opportunity of appeal, if he desires, and obtain the <span>Mar. 1841.</span>
opinion of the Chancellor upon the point so decided.
And in case the complainant desires to take an ap- Beggs and
peal and prosecute it diligently, I am willing to make another
an order restraining the defendant from proceeding Butler and
to collect his execution, upon proper terms.   It may another.
therefore be added to the order, that in case the com-
plainant shall, within three days from the entry of
the order, deposit with the clerk of this court the
amount of the judgment, with interest, and costs, and
sheriff's fees on the execution, and file and perfect
an appeal, within the same time, to the Chancellor,
and notice such an appeal for a hearing, as soon as
he can by the rules and practice of the court, that in
such case the defendant be restrained from procee-
ding at law upon his execution, until the decision
upon such appeal.   In case such deposit is made, the
defendant is to be at liberty to take it out of court,
upon filing a bond similar to that required by the
statute upon withdrawing deposits by a plaintiff.
And if the money remains in court until after the de-
cision of the Chancellor, and that decision affirms this
order, then the defendant may have such money paid
to him without bond or other security.