ADJUDGED IN

# THE COURT OF ERRORS AND APPEALS,

OF THE STATE OF NEW-JERSEY,

ON APPEAL FROM CHANCERY.

APRIL TERM, 1848.

---

JOSHUA DOUGHTY, appellant, and THE SOMERVILLE and EAS-TON RAILROAD COMPANY, respondents.

On appeal from an order dissolving an injunction, the Chancellor granted an order staying the proceeding to restrain which the injunction had issued until the next sitting of the Court of Errors and Appeals. A motion was made in that Court, at its next sitting, for an order extending the stay until the hearing on the appeal.

*Held*, that the Court of Errors and Appeals had power to make such an order; but that the granting or refusing it rested in the sound discretion of the Court. It was denied in this case.

The bill in this case, and the proceedings thereon in the Court of Chancery, will be found *ante*, 51.

*P. D. Vroom* and *A. Whitehead* in support of the motion.

*B. Williamson* and *F. T. Frelinghuysen* contra.

RANDOLPH, J. Mr. Doughty filed his bill in the Court of Chancery, setting forth such matters which the Chancellor deemed sufficient to authorize him to enjoin the defendants from

further proceeding, and which if correct, according to his allegation and understanding, would be sufficient to warrant a perpetual injunction; but the Chancellor afterwards, on application, made an order dissolving the injunction; and from that order the complainant has appealed to this court, as he has a perfect right to do, as well by the practice of the court as by statute. 26 Wend. 115; 4 Jno. R. 310; Rev. Stat. 921.

The Chancellor having granted a stay of proceedings until the coming in of the appeal, we are now asked to extend that order to the hearing; and the first question raised, is as to the power of the court to grant such an order; it being, as alleged, an exercise of original jurisdiction, and we but an appellate tribunal. I had supposed that the question of power had been considered settled in this court, as well from its various exercises as from the discussion and opinions delivered in the Chegary case. The right to grant such an order must exist in the very nature of things. To deny it is to deny the right of appeal in the case; for if we have no power to protect the subject matter of the appeal, then is the right nugatory. It would be worse than useless for us to hear the merits of the appeal argued, and to decide thereon three or six months after the evil complained of has been suffered to be committed, and has become irremediable or the injury irreparable. Nor is the granting a temporary order at this time any more an exercise of original jurisdiction than the reversing, at the hearing, of the order of the Chancellor dissolving the injunction; for that would be in fact granting a perpetual injunction. If we have that power, as of course we must have, then we must also have the power to protect the rights of the parties within the jurisdiction of the court until the cause can be heard. And as a mere question of power or right of jurisdiction, I see no distinction between this case and the ordinary case of a stay of execution or proceedings in the court below. Both are dependant on precisely the same principles; but in the exercise of the power by this court, there may be much more difficulty and delicacy in the one than in the other. Why is it that we grant, even as a matter of course, a stay of proceedings in the court below? Why, simply to preserve our own jurisdiction of the case, and to protect the rights of the

parties till they can be heard, according to the rules and practice of this court. And is not the granting a rule of the kind now asked for, precisely for the same purpose, based on the same principles? The ordinary rule, perhaps, stays an execution and sale of mortgaged premises, which might be set aside and the parties restored to their rights without the order of stay; but cases may arise when, unless such a rule as is now asked for is granted, the property in dispute may be destroyed, before the hearing, or the parties placed in such a situation, that although we may then reverse the dissolution and revive the injunction, our whole proceeding may be nugatory and the party without remedy in this or any other court. So that in fact the reason for the existence of the power is stronger in a case of this kind than in an ordinary stay. Formerly the mere appeal was a stay to all proceedings; but about 1807 the rule was changed in England, 15 *Vesey*, 184; and the practice now is, either for the Chancellor to grant an order to stay proceedings till the hearing, or for this court, on application, to make the order. *Edw. on Injunctions*, 229; 15 *Vesey*, 182; 3 *Paige*, 381; and in Sea Insurance Co. *v.* Ward, (see 20 Wend. 590,) the Court of Appeals of New York recognized their power to modify or even dissolve an injunction before the hearing, when it becomes necessary to prevent the waste or destruction of the property. "We should do *here*," says Nelson, Ch. J., "what the Court below would be called upon to do in a judicious exercise of its powers."

I am aware that most of the cases are those of mere ordinary stay of proceedings; but that arises in the first place from such being frequent, whilst such as the present case seldom occur. And in the next place, because the courts and the authors on the subject have never made and never could make any distinction in principle between one set of cases and another. They lay down the principles and the general practice, which apply to all cases, including, of course, those like the present. If injunction cases formed an exception to the general rule, I think some case or some author would have pointed it out, or some Court have refused the order to stay upon the ground of defective power in the court; but I find no such distinction or refusal. The or-

dinary rule of stay, and such as the present, we have seen and heard on the same principles. I think that we may go further, and say that they are only different modifications of the same rule ; a decree is appealed from, and the ordinary rule stays all proceedings in the cause, whether in the Court below, or by its officers, or the parties, or others. For the time it puts a stop to the decree and to all proceedings by virtue thereof, and leaves the parties as if the decree had not been pronounced, and the judgment or deed thereby set aside in full force. So in a case like the present, the order to dissolve is appealed from, and a stay is a mere stay of proceedings by virtue thereof; that is, like the common order, it stays for the time the operation of the order appealed from precisely as if it had not been made, and whilst it issues no new injunction, it simply has the effect of reviving the old one, or modifying it, till the appeal can be heard ; leaving it in force like the deed or judgment in the common case. And herein is the difference between the appeal from an order *dissolving* an injunction, and one from an order *refusing* an injunction. The former issues no new injunction till the hearing, but simply suspends till then the order complained of, leaving the case to stand as though the order had not been made ; whilst in the latter case a stay is an original injunction, issued where none ever had existed before, and which could not be allowed without first hearing and deciding on the entire merits of the case ; and yet even that could be allowed at the hearing—a pretty conclusive answer to the question of jurisdiction.

Of the right to grant the rule I think there can be no doubt. As to the exercise of it in the present instance there is much more doubt. It must rest with the sound discretion of the court. Never to issue it, would destroy the right of appeal in such cases ; always to grant it as of course, would be oppressive and require some modification of the power of granting injunctions, and render the dissolving an injunction and appeal equivalent to a continuation of the injunction. We must look not to the merits of the appeal so much as the circumstances of the case and the situation of the property. If the complainant is right in his positions and we to determine on the the hearing of the appeal, then there is no power in the defendant to construct

the road through him, and it should not be done, because it may work a great injury to him, and be of no benefit to defendants. But if he is wrong, then an entire stay of the Company would be oppressive to them and injurious to the public.   I think, however, that the Company may be suffered to go on and make and file their survey, and do every other act except the entering and breaking ground, so that when the appeal is determined, if it be for the complainant, no irreparable injury is done to him ; and if for defendants, that they may immediately proceed and make the road through complainant's grounds ; and that the order of stay should be modified accordingly.

In this opinion McCARTER, Judge, concurred.

GREEN, C. J.   By the ancient practice it was held that an appeal from a Court of Equity stayed all further proceedings in the court below.   But by the modern English practice, the appeal does not stay proceedings, but an order for that purpose must be obtained either in the Court of Chancery or in the House of Lords.   15 *Vesey*, 182, *Huguenin* v. *Baselu* ; 16 *Vesey*, 216, *Willan* v. *Willan* ; 17 *Vesey*, 380, *Monkhouse* v. *The Corporation of Bedford* ; *Eden on Inj.* 229.

The better practice seems to be to make the application to the House of Lords, for even the order staying proceedings may be appealed from.   15 *Vesey*, 182 ; *Lewes* v. *Morgan*, 5 *Price*, 468.

By our practice, an appeal from an interlocutory decree does not stay proceedings except by an order of this court or the Court of Chancery for that purpose.   If an appeal from a final decree be filed in ten days, it prevents issuing process on the decree.   *Rules of the Court of Chancery*, rule XX.

Prior to the Revised Statutes in New York, the appeal *ipso facto* stayed proceedings on the point appealed from.   An order for leave to proceed was necessary.   *Green* v. *Winter*, 1 *J. Chan.* 81 ; 2 *Hoffman's Chan. Pr.* 31 ; *Messonier* v. *Kauman*, 3 *John. Chan. R.* 66.

The injunction being dissolved, the appeal cannot revive the process or give it force.   It cannot be revived but by a new

40

exercise of judicial power.  *Hoyt* v. *Gilston,* 13 *John. R.* 140 ; *Wood* v. *Dwight,* 7 *J. Ch. R.* 295 ; *Hart* v. *Mayor of Albany,* 3 *Paige,* 381.

It is, in effect, the granting of a new injunction. It is said that this is an original exercise of judicial power ; and unquestionably it is so. It is thereupon objected that this is a mere appellate tribunal, and cannot exercise such power. The consequence does not follow. It may not exercise original power in acquiring jurisdiction over the cause. But that jurisdiction once regularly obtained, this court may exercise original jurisdiction over the parties, especially when the proceeding is *in rem,* and the object of the order to maintain unchanged, as far as practicable, the *status* or condition of the subject matter of the controversy during the pendency of the suit. It is on the same principle upon which a court of common law, in an action of ejectment or dower will make an order upon the party in possession, restraining the commission of waste. And a Court of Equity, prior to the hearing or argument, will, upon the same principle, grant a temporary injunction until the case can be heard. It is an inherent power in all superior tribunals, essential to the attainment of the object of litigation and the ends of justice. I am of opinion, therefore, that this court must of necessity have the power to make the order applied for.

The power existing, is this a proper case for its exercise? The question presented is not whether the appellate court will stay proceedings in the court below, upon the point appealed from, pending the appeal ; but it is, whether upon an appeal from a decree of the Chancellor denying or dissolving an injunction, the appellate court will grant a temporary injunction until the final hearing of the appeal. We are upon this point entirely without precedent except in our own State. No precedent can be found either in the House of Lords or in the Court of Errors of the State of New York, whose practice is strongly analagous to our own.

The first case in this court, of which I have any knowledge, is that of *Suydam* v. *New Jersey Railroad Company,* at January term, 1849. That order, it is well known, was obtained by surprise, without notice, in the absence of the opposing coun-

sel, and under circumstances which should prevent its ever being resorted to or relied upon as a precedent. The language, moreover, in which it is couched, leaves it extremely doubtful whether the court were in fact apprised of the real design of the order. It purports to be a mere order to stay proceedings upon the decree.

In the case of *Chetwood* v. *Brittain*, at May term, 1843, an order was granted in express terms staying proceedings at law. This is stated in the order to be by consent.

Since the present organization of the court, at July term, 1845, a similar rule was granted in *Chegary* v. *Scofield.* This rule, too, was obtained by surprise, without argument, in the absence of opposing counsel; and at the succeeding term was set aside by a decided vote of the court. Unfortunately the precise ground of setting aside the order does not appear. It may have been, and probably was, upon the ground that it went beyond the prayer of the original bill, and was made to operate upon persons not parties to the record.

It is worthy of notice that both in *Chetwood* v. *Brittain* and in *Chegary* v. *Scofield*, the injunction was merely auxiliary to the main design of the suit. The object of the bill in one case was to avoid a bond; in the other, a Sheriff's sale. The injunction in the former case restrained a suit at law upon the bond; in the latter, the delivery of the Sheriff's deed. In both cases the order restraining proceedings was made without the least reference to the merits of the case. The original design of the order was merely to restrain proceedings until the case could be heard. In neither case were the merits necessarily involved, nor could the order operate to the serious detriment of the party enjoined.

But in the present instance the whole object of the bill is the injunction. The sole inquiry is, should the injunction issue? The Chancellor, upon a full consideration, has decided that the injunction should not issue. This court are now asked, not to restrain proceedings in the court below, but to restrain the Company from proceeding under their charter. The power of this court is invoked to arrest the construction of the road; to do, what upon mature consideration the Chancellor has decided ought not to be done. It is to reverse, at least temporarily, the

order of the Chancellor, and to grant the complainant *in limine* the prayer of his bill, before the cause has been heard, before his right to an injunction has been considered or settled in this court, and that, too, after a solemn decision in the court below that no injunction should issue. In many cases, and probably in this, a temporary injunction before final hearing will effect the design of the applicant as effectually as the granting of a perpetual injunction. It will work an irreparable injury to the party enjoined, and compel them, in order to avoid that evil, to submit to any terms which the adverse party may dictate. It is manifestly a very high and delicate exercise of power—one which should by no means be exercised as a matter of course, but only upon the most imminent necessity.

The granting of this order necessarily involves the merits o f the whole controversy. The argument upon the motion has necessarily and unavoidably turned upon the merits. The cause has been argued precisely as if we were now upon the hearing of the appeal. I think the merits ought not to be heard upon this summary motion. The practice will lead unavoidably either to a decision upon a partial hearing, or to a prejudging of the case upon its merits, in contravention of the rules and practice of the court.

It is a power which, in all cases where the merits are thus necessarily involved, had better be left to the discretion of the Chancellor. He may properly exercise it, and with much more safety than this court are likely to do. He is familiar with the case, and may, without the necessity of a further argument, if he thinks the case demands it, grant a temporary injunction until the cause can be heard in this court.

That course was adopted in the case of *Hart* v. *The Mayor of Albany*, 3 *Paige*, 386. The bill was there filed for the purpose of restraining the corporation of Albany from removing from the Albany Basin a floating storehouse, which the complainant had erected and moored therein, against the ordinance of the corporation. On filing the bill, an *ex parte* order was made for an injunction restraining the defendants from carrying the provision of the ordinance of the corporation into effect. On the coming in of the answer the injunction was dissolved. From

that decree Hart the complainant appealed.   Pending the appeal the corporation were proceeding to carry the ordinance into effect by taking down and removing the storehouse.   The appellant thereupon applied to the Chancellor for an order restraining proceedings pending the appeal.   And upon the complainant's solicitor stipulating to expedite the cause so as to bring it to a hearing at the next term of the Court of Appeals, a temporary injunction was granted by the Chancellor until after the next December session of the Court of Appeals, unless the appeal should be sooner disposed of by that court.

The exercise of this power of the Chancellor may always preserve, *pendente lite*, the just rights of the parties litigant.   There is no necessity for its exercise by this court.

The opinion of the Chancellor in *Monkhouse* v. *The Corporation of Bedford*, 17 *Vesey*, 380, shows that the power even in that court will be exercised with great caution, and only when it can be done consistently with the rights of the party in whose favor the decree is made.   The exercise of the power by this court in cases circumstanced like that now under consideration, will unavoidably be productive of serious evils without any corresponding benefit.   It would be far better, and more conducive to the ends of justice, to permit the appellant in all injunction bills, where the injunction is denied by the Chancellor, to bring on the final hearing of the cause immediately upon the coming in of the appeal.

The motion must be denied.

In this opinion SINNICKSON, PORTER, SCHENCK and SPEER, Judges, and CARPENTER, Justice, concurred.

Motion denied.