## SLAUGHTER-HOUSE CASES.

THE BUTCHERS' BENEVOLENT ASSOCIATION OF NEW ORLEANS *v.* THE CRESCENT CITY LIVE-STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.

SAME DEFENDANTS *v.* SAME PLAINTIFFS.

HOTAIR IMBAU ET AL. *v.* THE CRESCENT CITY LIVE-STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.

THE LIVE-STOCK DÉALERS' AND BUTCHERS' ASSOCIATION OF NEW ORLEANS *v.* THE CRESCENT CITY LIVE-STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.

PAUL ESTEBEN ET AL. *v.* THE STATE OF LOUISIANA, EX RELATIONE.

1. A writ of error has the effect to remove the record into the court granting the writ, and when the conditions prescribed in the 23d section of the Judiciary Act are complied with, the jurisdiction of the subordinate court is suspended until the cause is remanded from the appellate tribunal.

2. Neither appeals nor writs of error become a supersedeas and stay execution by virtue merely of process issued by this court; but this effect is derived from the Judiciary Act on complying with its conditions.

3. When these conditions are complied with, if the subordinate court proceeds thereafter to issue final process, it is competent for this court, in the exercise of its appellate power, to correct the error by a supersedeas, and this may be done though the application for the supersedeas is made before the return day of the writ of error.

4. Where injunctions had been granted in the District Court of the State of Louisiana, and suspensive appeals had been taken to the Supreme Court of the State, where the decrees granting the injunctions had been affirmed, and a writ of error under the 25th section of the Judiciary Act sued out to that judgment of affirmance, the writ of error and bond, though filed within ten days of the affirmance, did not authorize this court to enjoin or supersede the action of the District Court in giving effect to the said injunctions subsequent to the issuing of the writ of error. The supersedeas of the act operated alone upon the Supreme Court of the State to which the writ of error is directed under the said 25th section.

5. The appeals from the District to the Supreme Court of the State operated as a stay of execution, and suspended all jurisdiction to proceed further until the cause was remanded. But when the Supreme Court rendered

its final judgment and perpetuated the injunction, whatever conditions were annexed to the appeal were abrogated, as the appeal was then fully executed.

6. A writ of error to a State court cannot have any greater effect than if the judgment or decree had been rendered or passed in a Circuit Court; and neither an injunction nor a decree dissolving an injunction passed in a Circuit Court is reversed or nullified by an appeal or writ of error before the cause is heard in this court.

THESE were motions made at the close of this term (December, 1869), in behalf of several plaintiffs in error, to enforce the *supersedeas* on writs of error which had issued in five several cases to the Supreme Court of the State of Louisiana, returnable to the term now coming (December, 1870), of this court.

The case was this:

By the 25th section of the Judiciary Act of 1789, this court has power, on writ of error, to re-examine a *final* judgment or decree in any suit in the highest court of law or equity of a State in which a decision in the suit could be had, " where is drawn in question the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution of the United States, and the decision is in favor of such their validity." By this same section the writ of error to such Supreme Court of the State " shall have the same effect as if the judgment or decree complained of had been rendered or passed *by a Circuit Court.*"

By a prior section of the act (the 22d) it is enacted that "*final* judgments and decrees in civil actions and suits in equity *in Circuit Courts* . . . may be re-examined, and reversed, or affirmed in the Supreme Court, a citation to the adverse party being in such case signed by a judge of such Circuit Court, or justice of the Supreme Court, and the adverse party having at least thirty days' notice." The same section proceeds:

"And writs of error shall not be brought but within five years after rendering or passing the judgment or decree complained of. And every justice or judge signing a citation on any writ

of error, shall take good and sufficient security that the plaintiff in error shall prosecute his writ to effect," &c.

A following section (the 23d), declaring the *effect* of a writ of error to a judgment in a *Circuit* Court, says:

"That a writ of error, as aforesaid, *shall be a supersedeas and stay execution* in cases only where the writ is served, by a copy thereof being lodged for the adverse party in the clerk's office, within ten days after rendering the judgment or passing the decree complained of. Until the expiration of which term of ten days execution shall not issue in any case where a writ of error may be a supersedeas."

The same act of 1789 provides, by its fourteenth section, that this court "shall have power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statutes, *which may be necessary for the exercise of their respective jurisdictions and agreeable to the principles and usages of law.*"

An act, however, of March 2d, 1793, entitled "An act ' *in addition*' to the act" above quoted, of 1789, thus declares:

" Writs of *ne exeat* and injunction may be granted by any judge of the Supreme Court in cases where they might be granted by the Supreme or a Circuit Court; but no writ of ne exeat shall be granted unless a suit in equity be commenced and satisfactory proof made that the defendant designs quickly to depart from the United States; *nor shall a writ of injunction be granted to stay proceedings in any court of a State.*"

These statutory enactments being in force, the legislature of Louisiana, A.D. 1869, in professed exercise of its power to protect the health, promote the cleanliness, and regulate the police of the city of New Orleans, passed an act by which it ordered all animals imported for consumption in the city to be landed at certain places, and all intended for food to be slaughtered there, and for the purpose of executing this law conferred on seventeen persons, as a company, the exclusive right to maintain landings for cattle and to erect slaughter-houses, &c., chartering them under the name of

The Crescent City Live-stock Landing and Slaughter-house Company.

The plaintiffs in error, being different individuals and companies, undertaking or continuing to maintain *other* landings and slaughtering houses, in opposition to those of the chartered company, that company filed petitions in certain of the District Courts of the State asserting their right to the monopoly conferred by the act, and obtained preliminary injunctions against these different parties and associations prohibiting the use of the landings and the exercise of the business of slaughtering as infringing upon the exclusive right which the new company claimed under the act. These injunctions, upon the hearing of exceptions and answers, were perpetuated.

In other of the District Courts of the State, those who asserted that the act was a violation of their rights also filed petitions against the company, upon which preliminary injunctions were perpetuated in favor of the petitioners.

The ground maintained against the act was, that it violated the fourteenth amendment of the Constitution of the United States, which declares that " no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

These conflicting decrees in the District Courts were all taken by what are known in Louisiana as " suspensive appeals" to the Supreme Court of the State, where judgment in all was given in favor of the new company, which asserted the validity of the act. And to these judgments of the Supreme Court of the State writs of error were taken from this court under the already-mentioned 25th section of the Judiciary Act; the writs of error, service citation, bond, &c., being all regularly taken and made, and filed within the ten days prescribed by the 23d section, which prevents the writ of error from operating as a supersedeas and stay of execution unless these be taken within that time.

Before the judgments here complained of were rendered in the Supreme Court of Louisiana, the legislature of that State created a new court, known as the Eighth District Court of New Orleans, giving to *it* exclusive original jurisdiction in cases of injunction, and authorizing the removal of such cases into it from other courts.

The parties denying the rights of the new company to the exclusive privileges granted to it by the act of 1869, being, .after the writ of error from this court to the Supreme Court of the State, about to proceed to the landing and killing of cattle, &c., in disregard of the injunction, which, as they asserted, was superseded by the writ of error taken from this court, the attorney-general of Louisiana, now intervening on what till now had been a litigation between citizens in a question of private right, moved in this new court in one of the cases here the subject of writ of error to enforce the judgment rendered on appeal to the Supreme Court of the State making perpetual the injunction originally granted by the court from which the cause was removed; but the new court refused to grant this motion on the ground that the writ of error sued out to this court (the Supreme Court of the United States) operated as a supersedeas under the 23d section of the Judiciary Act. But it did enforce the *preliminary* injunctions granted by those District Courts which thought that injunctions ought to be granted; and, in addition, upon a petition in proceedings of an original character, instituted by the new corporation, and afterwards adopted by the attorney-general as representing the State, to which proceedings none of the plaintiffs in error in these present cases were parties, but which were directed against the corporation of New Orleans and the board of metropolitan police there, the new court ordered the city and the board of police to prevent all persons except the new company from landing or slaughtering cattle or selling animal meat for food.

In this state of things the plaintiffs in error in the five several cases (here designated generally and by their popular name as "The Slaughter-house Cases," but of which

the specific names are also given at the beginning of the case, on p. 273) filed petitions in this court setting forth the general history of things below, the fact that they had obtained writs of error, &c., within ten days, so as to remove the causes to this court and to be a *supersedeas to any execution;* that after this had been done the defendants in error, to defeat the operation of the writs and in disobedience of the supersedeas, applied to the Eighth District Court for orders of the sort already described *to prevent* all persons (except the defendants) from landing, keeping, or slaughtering any cattle; that the orders were granted as asked for, and had been executed so as to prevent the plaintiffs in error from having any benefit of the supersedeas to which they were entitled, and so far as the orders were on the original proceedings had in effect turned the corporation of New Orleans and the metropolitan board of police into sheriffs to enforce the judgments of courts which had been superseded by the writs of error. All of which would appear, the petitioners asserted, from the record of the proceedings in the Eighth District Court, and the affidavits on file with the same, submitted with the petition.

The motion in this court therefore was for an order of injunction and supersedeas to command the defendants in error and the city of New Orleans, the metropolitan board of police, in no manner to hinder or to prevent the plaintiffs in error from landing or slaughtering animals, or of having, keeping, or establishing landings or slaughter-houses, or for vending animal food in the markets of New Orleans, as fully as they could before the passage of the act of 1869, incorporating the defendants, or as the defendants were allowed to do by the said act, and that a suitable order might be made to the said Eighth District Court to prohibit it from further proceeding in the premises.

*Messrs. J. A. Campbell, P. Phillips, and J. Q. A. Fellows, in support of the motion:*

In England the *allowance* of the writ of error suspends all further proceedings in a cause, and on motion such proceed-

ings will be set aside. The service of notice of the allowance is only material to bring the party into contempt if he proceed subsequently.* In one case† it was held to be a contempt in the attorney in taking out execution against bail to the action, though this was merely collateral to the judgment on which the pending writ of error operated.

The effect of an appeal, though taken from a mere *interlocutory order*, was originally maintained by the House of Lords to suspend all proceedings whatever until the decision of the Lords on the appeal. In 1772 this was so far modified as to allow the appeal to be a supersedeas only as to the matter appealed from; and the Chancellor was permitted, during the recess of Parliament, to take such proceedings pending the appeal as were requisite for the preservation of the rights of the parties. In 1807, the rule, as it now exists, was adopted, to wit, that the appeal did not operate, of itself, a suspension of *any* proceedings. But this suspension was allowed, in whole or in part, by the appellate court, or by the Chancellor, according to the exigency of the case.‡

The Judiciary Act of 1789 found the rule, as established in England in 1772, in full operation, and has dealt with the whole subject. The writ may be sued out at any time within five years from the rendering of the judgment or decree; but when taken within ten days thereafter, the statute declares that it " *shall be a supersedeas and stay execution.*"

The supersedeas thus given will be protected and enforced by this court by virtue of its inherent powers as an appellate tribunal. The motion to quash an execution issued after the allowance and filing of the writ of error might be made in the court below. But it is equally competent for this court, in the furtherance of justice, to do the same

---

* Miller *v.* Newbald, 1 East, 662; Sampson *v.* Brown, 2 Id. 439; Meagher *v.* Vandyck, 2 Bosanquet and Puller, 370 ; Dudley *v.* Stokes, 2 W. Blackstone, 1183; Jacques *v.* Nixon, 1 Term, 280.

† Throckmorton *v.* Church, 1 Peere Williams, 685.

‡ Hart *v.* Mayor, 3 Paige, 383.

thing. The supersedeas order is directed not only to the parties and the executive officers, but also to the *judges* of the court.*

"It is a well-settled rule," say the Supreme Court of Louisiana,† "that after a cause is sent to this court by regular appeal, the court of the first instance can no longer take any steps in the case except such as may be necessary to transmit the record to the court above."

Decisions in Louisiana demonstrate that the cases now before this court were proper cases for suspensive appeals. In one case‡ the petitioner, asserting himself to be chief of police, in another§ to be sheriff, filed his petition for injunction against the incumbents. The petitions were granted, and orders restraining the parties incumbent from a further performance of official duties, and for delivery up of books, &c., pertaining to their offices, were made a part of the injunctive orders. Suspensive appeals were prayed for and denied in the court below, but on petition for mandamus the Supreme Court of the State made the rule peremptory, holding that the right to such an appeal had been constantly recognized; and a careful examination of the Code of Practice shows that the right to a suspensive appeal is the rule, and that it stays proceedings, save in cases specially excepted.

It would seem to be a mere conceit (though this was the idea of the Court of the Eighth District), that the matter appealed from was the perpetuated injunction, and that the appeal did not reach the preliminary injunction. Of what consequence to the defendant is his suspensive appeal, what rights does it preserve, if this be its true operation? The *ex parte* order for injunction is subsequently declared to be perpetuated. It is one and the same injunction. The right of the defendant, under the suspensive appeal, is the right

---

* Stockton *v.* Bishop, 2 Howard, 74; Hardeman *v.* Anderson, 4 Id. 643; Ex parte Milwaukee, 5 Wallace, 188; Railroad Company *v.* Bradleys, 7 Id. 577.

† State *v.* Judge, 19 Louisiana, 168.

‡ Ex rel. Ingram *v.* Judge, 20 Annual, 530.

§ Ex rel. Cain *v.* Judge, Ib. 574.

not to be disturbed until he can get the judgment of the appellate court; and if, notwithstanding the appeal, he can be ousted, of what consequence is it that this is done on the preliminary, and not on the final order? If the appeal does not protect his possession, then it is not suspensive.

In a judicial sense the judgment below was not affirmed, for this was the question which the law had transferred for decision to this court. In other words, the case stood as if the Act of 1789 had brought the case up from the decree of the District Court directly.

The Eighth District Court, of whose action we complain, admits that the judgment of the Supreme Court was superseded, and refused a motion on that ground to make that judgment executory, and yet gave execution on the preliminary order on what we have attempted to show was an unfounded distinction. If, therefore, the writ of error had been directly addressed to the District Court, and pending the cause in this court the court of first instance had proceeded to execute the injunction, we cannot doubt that the motion to set aside such proceedings would be granted. It would seem to follow that the same motion must be granted when the Supreme Court is intermediary.

*Messrs. Black, Durant, Carpenter, and Allen, contra:*

1. Writs of error to reverse judgments at law rest on a different basis from writs of error brought for the purpose of obtaining a revision of a case by the Supreme Court of the United States. Supersedeas is a law term, and has no application to a chancery proceeding.

2. In the English chancery practice the question whether an appeal shall stay proceedings rests much in the discretion of the tribunal from which the appeal is taken; and it is common to make special application to that tribunal, either to stay further proceedings or to pass an order that proceedings shall not be stayed. Such was the course in the recent English case, *Barrs* v. *Fewkes.** The application was made

* 1 Law Reports (Eq.), 392. See, also, Harrington v. Harrington, Ib. 3 Chan. 564.

to the court appealed from.  The general rule is, that an appeal will not stay proceedings.*

3. Under the practice by which causes are removed from State courts to this court, the removal is in the nature of an appeal.  It is a continuation of the same litigation, not a new suit, as a writ of error at common law.  The mode of removal is only a matter of form.  The substance of the matter is, that the cause is brought before a supervising tribunal for revision; and the jurisdiction of the United States Court is in its nature appellate.†  The writ of error, therefore, is only a new stage in the cause; and accordingly an injunction should continue in force until the determination upon the writ of error, which is the ultimate determination of the original suit.‡

4. It is impossible to suppose that there should not be authority in a court of equity, by a decree, to hold matters in a certain fixed position until the ultimate determination of the cause.  In many cases, where, if the injunction is suspended while the appeal or writ of error is pending, all the mischief will be done which is sought to be prevented.: as, *ex. gr.*, in an injunction to stay waste by cutting down trees, the trees will be cut; in an injunction to restrain a nuisance affecting health, to abate and suppress a source of disease, disease and death will prevail; in an injunction to restrain the marriage of a ward, an irretrievable mischief may occur at once; in an injunction to restrain the publication of pri-

---

* See General Order in House of Lords in 1807, copied in 15 Vesey, 184; Gwynn v. Lethbridge, 14 Id. 585; Willan v. Willan, 16 Id. 216; St. Paul's v. Morris, 9 Id. 316; Waldo v. Caley, 16 Id. 209; Hart v. Mayor, &c., of Albany, 3 Paige, Ch. 381, where there is some account of the English practice; also, Walburn v. Ingilby, 1 Mylne & Keene, 61.

† Martin v. Hunter, 1 Wheaton, 349, 350; Cohens v. Virginia, 6 Id. 410; Nations v. Johnson, 24 Howard, 204, 205; Bryan v. Bates, 12 Allen, 213.

‡ Hart v. Mayor, &c., of Albany, 3 Paige, 381; Graves v. Maguire, 6 Id. 381; Stone v. Carlan, 2 Sandford's Sup. Ct. 738; Merced Mining Co v. Fremont, 7 California, 131; Spring v. South Carolina Ins. Co., 6 Wheaton, 519; Thompson v. McKim, 6 Harris and Johnson, 302, 331–334; Williamson v. Carnan, 1 Gill and Johnson, 184, 202, 203, 209, 210; Boren v. Chisholm, 3 Alabama, 513; Garrow v. Carpenter, 4 Stewart and Porter, 336; Coleman v. Albany Bridge, 5 Blatchford, 58.

vate letters, or any libellous matter, or to restrain the disclosure of secrets, the knowledge of which was gained in the course of a confidential employment, or anything else, the doing of which consists of a single act, if the injunction is suspended, then the whole equitable remedy is in vain.

5. So in cases at law, suppose articles have been seized on a search warrant; stolen goods, counterfeit coin, forged bank notes, implements for counterfeiting, which State laws may authorize to be seized and held for condemnation and forfeiture ; and a restoration to the owner (in case of stolen goods), or a condemnation and forfeiture and destruction of them, have been decreed. If a writ of error is sued out, that supersedes the final order of restoration to the owner, or condemnation ; but shall the articles therefore be given up to the person who had the guilty possession of them, or shall they still be held in the custody of the law ?

6. It must be the case that there is power in a court of equity, and also, when necessary, in a court of law, to pass orders which shall have the effect to hold things as they are, and prevent any subsequent change in the situation of things which shall be disastrous to the plaintiff, or to the public, and fatal to the relief which is sought. The law of Louisiana is very explicit in this regard.*

7. What power, then, has the Supreme Court of the United States in the premises ?

It has power to take such measures as may be necessary to preserve the condition of things which existed just prior to the passing of the final decree in the court below. The supersedeas attaches to so much of the final sentence as determines the ultimate rights of the party.†

8. Only *final* judgments and decrees can be re-examined and reversed on writs of error. The cases are numerous where this court has refused to entertain any application to

---

* See Louisiana C. P., art. 307; Delacroix *v.* Villere, 11 Louisiana Annual, pp. 39 to 41; White *v.* Cazenave, 14 Id. 57; Knabe *v.* Fernot, 14 Id. 847.

† Bryan *v.* Bates, 12 Allen, 213; Nauer *v.* Thomas, 13 Id. 574; Fleming *v.* Clark, 12 Id. 191.

Restatement of the case in the opinion.

deal with preliminary decrees. A striking case, in some respects analogous to the present, was that of *Gibbons* v. *Ogden*.*

9. The 23d section of the Judiciary Act of 1789 recognizes that preliminary injunctions shall stand. The statute provides that a writ of error shall be "a supersedeas and stay of execution, in case," &c. Executions are not to issue; that is, precepts to enforce the final judgment of the State courts are not to issue. It is only the final and ultimate rights, and not the incidental rights of parties, that writs of error are designed to vindicate.

10. The present motions are premature; for the writs of error are not returnable till the first day of next term.

11. The Act of 1793 forbids the granting of injunctions "to stay proceedings in any court of a State."†

*Reply :* 1. Delaying a motion for a supersedeas till the return day of the writ of error would frequently render the application fruitless. Such is not the practice.‡

2. The power given to this court by the Act of 1789 to issue all writs necessary for its jurisdiction is not taken away by the Act of 1793, which limits the writ of *ne exeat*, and restrains the issuing of an injunction to a State court to stay proceedings. There are no repealing words in this statute, and repeals by implication are not favored.§ The title of the act shows that no repeal was intended.

Mr. Justice CLIFFORD stated the case in detail, and delivered the opinion of the court.

All persons and corporations, except the Crescent City Live-stock Landing and Slaughter-house Company, are prohibited, by an act passed by the legislature of the State of

* 6 Wheaton, 448; see, also, Verden *v.* Coleman, 18 Howard, 86; Boyle *v.* Zacharie, 6 Peters, 656.

† See *supra*, p. 275.

‡ Ex parte Milwaukee, 5 Wallace, 188; Railroad Co. *v.* Bradleys, 7 Id. 577.

§ Ex parte Yerger, 8 Wallace, 105.

Louisiana, to land, keep, or slaughter any cattle, beeves, calves, sheep, swine, or other animals, or to have, keep, or establish any stock-landings, yards, pens, slaughter-houses, or abattoirs at any point or place within the city of New Orleans or the parishes of Orleans, Jefferson, and St. Bernard, or at any place on the east bank of the river within the corporate limits of the city, or at any point on the west bank of the same above the railroad depot therein mentioned and designated.

Said act was passed on the eighth day of March, 1869, and is entitled An act to protect the health of the city of New Orleans, to locate the stock-landings and slaughter-houses, and to incorporate "the Crescent City Live-stock Landing and Slaughter-house Company." Though approved on the day mentioned, still the act did not go into operation till the first day of June following, but it appearing that the company created and organized under the act intended to enforce the prohibition, the plaintiffs in the suit first mentioned, on the twenty-sixth of May of that year, filed a petition or bill of complaint in the Sixth District Court of New Orleans against that company, alleging that for more than thirty years past there had existed in the parish of Orleans and the adjacent parishes the lawful trade of butchering domestic animals to supply with meat the markets of the city and the adjacent parishes, and that the regular pursuit of that trade involved the necessity of collecting, feeding, and sheltering such animals before they were slaughtered, and of preparing and preserving their meat for use or sale for food, and their hides, tallow, and other valuable parts of the animals for the market; that a thousand persons throughout that period have been engaged in that trade without interruption and unmolested prior to the organization of that company by any ordinance, regulation, or enactment from any public authority; that they, the petitioners, are duly incorporated under a law of the State, and that for more than two years they have been and are in the lawful exercise of that trade and employment, and that they have constructed and erected for that pur-

pose, and now hold within those parishes, places for land-
ing cattle and for sheltering the same, and slaughter-houses
for butchering the animals for market, and have secured
stalls and such other privileges in the market-places as are
necessary and convenient to the prosecution of the business;
that the respondents, though they must well know that the
act is in violation of the Constitution of the United States,
openly declare that it is their intention to execute its pro-
visions and to compel the complainants to abandon the
objects of their incorporation, and to destroy the value of
their investments, and render it necessary for them to relin-
quish their lawful pursuit and the prosecution of their legiti-
mate business.

Wherefore they pray that the respondents may be enjoined
from any such interference with the petitioners, and from
interfering, directly or indirectly, by suit or otherwise, with
their customers in purchasing, slaughtering, or butchering
animals of any kind used for meat, during the pendency of
the suit, and also for process, and that they, the complain-
ants, may have judgment against the respondents in damages
for the sum of ten thousand dollars.

On the same day the respondents in that suit instituted in
the Fifth District Court of New Orleans a counter suit
against the complainants in the suit commenced against
them in the Sixth District Court of the same municipality.
They allege in their petition that " the sole and exclusive
privilege of conducting and carrying on the live-stock land-
ing and slaughter-house business in that city and its environs
is vested in their company, as is fully set forth in the act of
their incorporation ; that the corporation named in their
petition, as respondents, are about to land, shelter, and pro-
tect cattle, &c., intended for slaughter, and to conduct and
carry on the live-stock landing and slaughter-house business
within the limits of the city as prohibited by law and in
violation of their exclusive rights and privileges. Where-
fore they pray that the respondents, the complainants in the
suit pending in the Sixth District Court, may be enjoined
and prohibited from landing, stabling, and sheltering cattle,

&c., and other animals destined for sale and slaughter in that city, and from conducting and carrying on the live-stock landing and slaughter-house business within the limits of the parishes described in their charter, and from molesting and interfering with the petitioners in the exercise and enjoyment of their exclusive rights and privileges; and they also claim damages in the sum of four thousand dollars, and for general relief."

Judgment in the first suit was rendered for the petitioners, and it was ordered that the injunction previously issued in the case against the respondents should be made perpetual. Pursuant to the suggestion of the respondents in that case, that there was error to their prejudice in the final judgment of the Sixth District Court, it was ordered " that a suspensive appeal be granted herein to the defendants, returnable to the Supreme Court of the State."

Hearing was also had in the suit commenced in the Fifth District Court by the Crescent City Live-stock Landing and Slaughter-house Company against The Butchers' Benevolent Association of New Orleans, and it was ordered, adjudged, and decreed in that case that there be judgment in favor of the petitioners, and that the corporation respondents, their president and members, be forever enjoined and prohibited, as prayed in the petition.

Exceptions having been filed to certain rulings of the court, it was also ordered, on motion of the respondents, that they, the respondents, be allowed a suspensive appeal to the Supreme Court of the State, as in the preceding case.

Separate suits were also commenced in the Seventh District Court of the city against the Crescent City Live-stock Landing and Slaughter-house Company by Hotair Imbau et al., and by the Live-stock Dealers', and Butchers' Association of New Orleans, as appears by the transcripts filed here in those cases. Injunctions were prayed and granted against the respondents in both of those cases, and they, the respondents, were allowed suspensive appeals to the Supreme Court of the State from the respective judgments.

Suit was also commenced in behalf of the State by the

Attorney-General against Paul Esteben et al., in which it
is alleged that they have, without authority of law, formed
themselves into a corporation by the name of the Live-stock
Dealers' and Butchers' Association of New Orleans; that
they, as such corporation, are about to lease or purchase a
certain tract of land partly in the city and partly in the
parish of St. Bernard, and that they are about to commence
the erection of buildings and structures thereon for the
purpose of collecting, landing, and sheltering beef-cattle
designed for food, to be sold in the parishes of Orleans,
Jefferson, and St. Bernard, contrary to the act of the Gen-
eral Assembly of the State.    Wherefore the petitioner prays
that a writ of injunction. may issue restraining and enjoin-
ing the respondents from using that tract of land for the
purpose set forth in the petition and from slaughtering any
beef-cattle or any other animals intended to be sold for food
in those parishes.    Final judgment in the case was ren-
dered in favor of the State, and it was also ordered, adjudged,
and decreed that the respondents be forever enjoined and
restrained, as prayed by the petition.    Attempt was made
by the respondents to secure a rehearing, but the motion
was denied, and on their petition it was ordered that they
be allowed a suspensive appeal to the Supreme Court of the
State, as in the preceding cases.

These several appeals, together with one other which it
is unnecessary to describe, were duly entered in the Su-
preme Court of the State, and were, by the written agree-
ment of the parties, submitted for decision at the same time.
They were submitted on the twenty-eighth of January, 1870,
and the opinion of the appellate court was delivered on the
eleventh of April following.    Pursuant to that opinion the
judgment of the Sixth District Court, as rendered in the
first case, was reversed, and the directions of the Supreme
Court of the State were that the injunction granted by the
subordinate court should be dissolved, and that the demand
of the petitioners should be rejected with costs in both
courts.    They also rendered a judgment of reversal in the
same form and with the same directions in the third and

fourth cases, being the two appeals from the judgments rendered in the Seventh District Court. . Judgments of affirmance were also rendered on the same day in the second and fifth cases, in the order herein adopted, with costs of appeal.

Where the decision in the court below sustained the pretensions of the Crescent City Live-stock Landing and Slaughter-house Company the judgment of the subordinate court was affirmed, but the judgment of the subordinate court was reversed in each case where the decision of the subordinate court was adverse to those pretensions, and the injunctions in those cases were dissolved.

Petitions for rehearing were filed by the losing parties, on the twenty-sixth of April, 1870, and on the ninth of May following an entry was made in each case, that the petition for rehearing was refused. Writs of error to the State court were subsequently prayed by the same parties, and on the thirteenth of May last the writs of error were allowed by the Associate Justice of this court allotted to that circuit, and they were duly filed on the sixteenth day of the same month, as appears of record.

Filed, as the writs of error were, within ten days from the date of the entry refusing the petition for rehearing, it is claimed by the plaintiffs that the several writs of error operate as a supersedeas and stay execution, under the twenty-third section of the Judiciary Act. Doubts were at one time entertained upon that subject, but since the decision in the case of *Brockett* v. *Brockett*,* the question must be considered as settled, in accordance with the views of the plaintiffs.†

Sufficient bonds were given in each of these cases, which is necessary in every case, in order that the appeal or writ of error may operate as a supersedeas and stay execution on judgments removed into this court for re-examination. What is necessary is that the bond shall be sufficient, and when it is desired that the appeal or writ of error shall operate as a supersedeas the bond must be given within ten days from the date of the decree or judgment.‡

---

* 2 Howard, 238.    † Rubber Co. *v.* Goodyear, 6 Wallace, 155.    ‡ Ib.

Suppose the writs of error were seasonably sued out and that they operate in each case as a supersedeas and stay execution, as provided in the twenty-third section of the Judiciary Act, still the court is of the opinion that the several motions under consideration must be denied upon other grounds, and for reasons which are entirely satisfactory.

Controversies determined in a State court which are subject to re-examination in this court, are such, and such only as involve some one or more of the questions enumerated and described in the twenty-fifth section of the Judiciary Act, and which have passed to final judgment or decree in the highest court of law or equity of a State in which a decision in the suit could be had, as provided by the constitution and laws of the State. Appeals were taken in the cases before the court from the respective District Courts, where they were commenced, to the Supreme Court of that State before the writs of error granted by this court were sued out, and the decrees or judgments brought here for re-examination are the final decrees or judgments of the Supreme Court of the State in those cases.

Writs of error issued under the twenty-fifth section of the Judiciary Act have the same effect as if the judgments or decrees were rendered in a Circuit Court, and they operate as a supersedeas and stay execution only where the writ of error is served by a copy thereof being lodged for the adverse party in the clerk's office where the record remains, within ten days, Sundays exclusive, from the date of the judgment or decree.*

Such a writ of error is in the nature of a commission by which the judges of one court are authorized to examine a record upon which a judgment or decree was given in another court, and on such examination to reverse or affirm that judgment or decree. When regular in form, and duly served, the writ of error operates upon the record of the court to which it is addressed in the case described in the writ, and it has the effect to remove that record into the

---

* 1 Stat. at Large, 85.

court granting the writ of error and to submit it to re-examination, and the twenty-third section of the Judiciary Act provides to the effect that where all the conditions prescribed in that section concur in the case the jurisdiction of the court where the record remained when the writ of error was sued out and served shall be suspended until the cause is determined by or remanded from the appellate tribunal.*

Exceptional cases arise where the judgment or decree given on appeal in the highest court of a State is required by the law of the State to be returned to the subordinate court for execution, and in such cases it is held that the writ of error from this court may operate as a supersedeas, if granted and served at any time within ten days from the return entry of the proceedings in the court from which the record was removed, but in all other cases the writ of error must be issued and served within ten days from the date of the judgment or decree, in order that it may operate as a supersedeas and stay execution.†

Appeals and writs of error do not become a supersedeas and stay execution in the court where the judgment or decree remains by virtue of any process issued by this court merely as such, but they are constituted such by the act of Congress when the conditions prescribed in the twenty-third section of the Judiciary Act are fulfilled.   Where those conditions are complied with the act of Congress operates to suspend the jurisdiction of the court to which the writ of error is addressed, and stay execution in the case pending the writ of error and until the case is determined or remanded.‡

Power to issue a supersedeas to a judgment rendered in a subordinate court does not exist in this court where the writ of error is not sued out and served within ten days from the

---

* Cohens v. Virginia, 6 Wheaton, 410; Suydam v. Williamson, 20 Howard, 437; Barton v. Forsyth, 5 Wallace, 192.

† McGuire v. Commonwealth, 3 Wallace, 386; Gelston v. Hoyt, 3 Wheaton, 246; Green v. Van Buskerk, 3 Wallace, 450.

‡ Hogan v. Ross, 11 Howard, 296; United States v. Addison, 22 Id. 183; Hudgins et al. v. Kemp, 18 Id. 535; Adams v. Law, 16 Id. 148.

date of the judgment, except where the aggrieved party is obliged to sue out a second writ of error in consequence of the neglect of the clerk below to send up the record in season, or where the granting of such a writ is necessary to the exercise of the appellate jurisdiction of the court, as where the subordinate court improperly rejected the sureties to the bond because they were not residents of the district.\*

Undoubtedly the writs of error in these cases were seasonably sued out and served, and it is equally clear that the parties in whose favor they were granted complied in each case with all the conditions prescribed in the act of Congress as necessary to give the writ effect as a supersedeas and stay execution, as contended by the plaintiffs in the pending motions. Such proceedings operate as a stay of execution, and it is well settled that if the subordinate court, under such circumstances, proceeds to issue final process, it is competent for this court to issue a supersedeas, as an exercise of appellate power, to correct the error.†

Doubt upon that subject cannot be entertained where it appears that the court to which the writ of error was directed has made the return of the same to the proper term of the court, pursuant to the commands of the writ, and the same has been duly entered on the calendar. Objection is made, however, that the motions before the court are premature, as the return day of the writ of error is the first day of the next term, but we are of the opinion that the court possesses the power to grant a remedy in such a case even before the return day of the writ of error, where it appears that the court to which it was addressed has made return to the same, and that the plaintiff has filed in the clerk's office a copy of the record duly certified as required by law.

Except in a case of urgent necessity the court, in the ex-

---

\* Hogan *v.* Ross, 11 Howard, 296; Ex parte Milwaukee Railroad Co., 5 Wallace, 188; Stockton et al. *v.* Bishop, 2 Howard, 74; Wallen *v.* Williams, 7 Cranch, 279; Saltmarsh *v.* Tuthill, 12 Howard, 389; Hardeman *v.* Anderson, 4 Id. 640.

† Stockton et al. *v.* Bishop, 2 Howard, 75.

ercise of a proper discretion, might well decline to exercise the power before the return day of the writ, but the better opinion, we think, is that the jurisdiction for such a purpose attaches from the time the party in whose favor the writ of error is granted has complied with all the conditions prescribed in the act of Congress to make the writ of error operate as a supersedeas and stay of execution.*

Grant all this, still the court is of the opinion that the motions cannot be granted, as it is conceded that nothing has been done by the Supreme Court of the State since the writs of error were served and became a supersedeas, inconsistent with the prohibition contained in the act of Congress which gives the writs of error that effect.   Argument upon that topic is unnecessary as the affidavits filed in support of the motions affirm nothing of the kind, nor do the plaintiffs set up any such theory.

Incorporated as the respondents in the motions are by the General Assembly of the State, they claim the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughter-house business within the limits described and the privileges granted in the act giving them corporate powers.   On the other hand, the plaintiffs contend that the act granting them such exclusive privileges is in violation of the Constitution of the United States, and void, and that they, the plaintiffs, have equal right to establish a live-stock landing, and to erect slaughter-houses, and to conduct and carry on that business as if no such special privileges had been granted to the respondents.

Injunctions were obtained by each party against the other in the courts where the suits were commenced, but appeal was taken, in each case, by the losing party, to the Supreme Court of the State, where the injunctions previously granted against the respondents in the motions were dissolved and those previously granted against the plaintiffs were made perpetual.   Judgments of reversal on the one side and of affirmance on the other were accordingly rendered by the

---

* Railroad Co. v. Bradleys, 7 Wallace, 575.

Supreme Court of the State in the respective causes, as before explained, and it is to those judgments and to that court that the writs of error in question were directed and addressed. Those judgments remained in the Supreme Court of the State when the respective writs of error were sued out and became a supersedeas and stay of execution, and the records show that that court has neither reversed nor modified the judgments, nor any one of them, nor has that court done anything to vary or impair the rights of the parties or to carry the judgments into effect.

Subsequent to the commencement of these several suits, but before the judgments were rendered in the Supreme Court, the General Assembly of the State created another court in that city, called the Eighth District Court, and conferred upon that tribunal the exclusive original jurisdiction of injunction causes, and also made provision in the same act for the removal of such causes from other courts to that jurisdiction.

Supersedeas writs of error having been sued out by the plaintiffs to the respective judgments rendered in the Supreme Court, they claimed that the injunctions against them granted by that court were inoperative, and their theory was and still is that the writs of error had the effect to dissolve or suspend the injunctions granted by the Supreme Court of the State and to restore and render operative the injunctions decreed in the subordinate courts.

Governed by these views, the plaintiffs denied that the respondents could claim to exercise any such exclusive privileges as those described in their charter, and proceeded to make the necessary preparations for carrying on the same business. Opposite views were entertained by the respondent corporation and by the State authorities, and especially by the attorney-general, and for the purpose of testing the question he moved in the Fifth District Court that the fifth case embraced in the motions, as here classified, should be removed into the Eighth District Court, and the motion was granted.

Application was then made by him to the latter court to

enforce the judgment rendered on appeal in that case by the Supreme Court of the State, making perpetual the injunction originally granted by the court from which the cause was removed, but the court refused to grant the motion, because, as the court held, the writ of error sued out in the case operated as a supersedeas.

Attempt is not made to call in question the correctness of that decision, but the attorney-general on the same day obtained a rule in that court against all the respondents in that case, except one, to show cause, if any, why they should not be punished for contempt, as having violated the injunction granted in the case before the same was appealed to the Supreme Court of the State. Service was made under the rule and the respondents appeared, and were fully heard, but it appearing that the respondents had acted under the advice of counsel, the court refused to inflict any punishments. Directions, however, were given to the sheriff in the form of an order to enforce the preliminary injunction granted by the Fifth District Court.

Proceedings of an original character were also instituted by the present respondents in the same District Court, in which they prayed that the board of metropolitan police might be enjoined to prevent all persons, except the petitioners in that case, from conducting or carrying on the live-stock landing and slaughter-house business within their chartered limits. Accompanying that petition was an affidavit of merits, and upon that petition and affidavit an injunction was granted as prayed.

Three days later, to wit, on the sixth of June last, the attorney-general intervened for the State in the suit and adopted the petition and prayed that the injunction might be made perpetual. Various motions were made by parties opposed to the proceedings to dissolve or modify the injunction, but they were all overruled and denied by the court. No appeal was taken to the Supreme Court of the State, nor does it appear that any attempt was made by the respondents, in any form, to cause the proceedings to be re-examined in the court of last resort. They regarded it as unnecessary

to seek any such revision of the proceedings, as they insist that the legal effect of the writ of error issued from this court to the Supreme Court of the State was to vacate the injunction granted by the latter court and to continue in force the suspensive features of the appeals allowed by the subordinate courts.

Beyond doubt, the appeal in the form granted by the subordinate court operated as a stay of execution, and suspended the jurisdiction of the court to proceed further in the cause until the same should be determined or remanded, but the Supreme Court rendered a final judgment in the case and granted a perpetual injunction.

Whatever conditions were annexed to the appeal in the subordinate court were abrogated by the final judgment of the appellate tribunal, as the appeal was then fully executed. Had no writ of error been granted by this court the plaintiffs, it is presumed, would admit the correctness of that rule, but they insist that the effect of the writ of error, if made a supersedeas, is that it suspends the judgment of the Supreme Court and leaves the judgment of the subordinate court in full operation during the pendency of the writ of error.

Independent of statutory regulations, the term supersedeas has little or no application in equity suits, as the rule is well settled in the English courts that an appeal in chancery does not stop the proceedings under the decree from which the appeal was taken without the special order of the subordinate court.*

Proceedings are stayed in the courts of New York by appeal in a chancery suit to the extent that if the party desires to proceed, notwithstanding the appeal on the point from which the appeal was taken, he must make application to the chancellor for leave.†

Different rules upon the subject prevail in different jurisdictions, but the act of Congress provides that appeals in the Federal courts shall be subject to the same rules, regula-

---

* General Order, 15 Vesey, 184; Waldo v. Caly, 16 Id. 209; Willan v. Willan, 16 Id. 216; 2 Daniels's Chancery Practice, 1547.

† Green v. Winter, 1 Johnson's Chancery, 80.

tions, and restrictions as are prescribed in law in case of writs of error.*

Appeals do not lie from a State court to this court in any case, as the act of Congress gives no such remedy.   Rules and regulations prescribed by law of course control and furnish the rule of decision, but it seems to be well settled everywhere, in suits in equity, that an appeal from the decision of the court denying an application for an injunction does not operate as an injunction or stay of the proceedings pending the appeal.   Neither does an appeal from an order dissolving an injunction suspend the operation of the order so as to entitle the appellant to stay the proceedings pending the appeal, as matter of right, either in a suit at law or in equity.†

Separate examination of the several cases before the court as respects the effect of the writs of error upon the judgments removed into this court, may well be omitted, as the plaintiffs were the losing party in all the appeals from the courts of original jurisdiction to the Supreme Court.   They prevailed in three of the suits in the District Courts, but they were defeated in the Supreme Court in all the cases.

Viewed in any light it is clear that a writ of error to a State court cannot have any greater effect than if the judgment or decree had been rendered or passed in a Circuit Court, and it is quite certain that neither an injunction nor a decree dissolving an injunction passed in a Circuit Court is reversed or nullified by an appeal or writ of error before the cause is heard in this court.

Judgments and decrees of the Circuit Court are brought here for re-examination, and so are the judgments and decrees of a State court, and the only effect of the supersedeas is to prevent all further proceedings in the subordinate court

---

* 2 Stat. at Large, 244.

† Hart v. Mayor, 3 Paige, 381; Graves v. Maguire, 6 Id. 380; Merced Mining Co. v. Fremont, 7 California, 131; McGarrahan v. Maxwell, 28 Id. 91; Louisiana Code of Practice, art. 307; Delacroix v. Villere, 11 Louisiana Annual, 39; White v. Cazenave, 14 Id. 57; Knabe v. Fernot, 14 Id. 847.

except such as are necessary to preserve the rights of the parties.

Reference is also made to the fifth section of the act of the second of March, 1793, as conferring power upon this court to enjoin the proceedings in the Eighth District Court, but the conclusive answer to that suggestion is that there is no appellate relation between a subordinate State court and the Supreme Court of the United States, and where no such relation is established by law the prohibition of that section—*" nor shall a writ of injunction be granted to stay proceedings in any court of a State "*—applies to the Supreme Court as well as to the Circuit Court.*

Final judgments or decrees in any suit in the highest court of law or equity of a State, in which a decision in the suit could be had, may be removed here for re-examination if they involve some one or more of the questions specified in the section conferring the jurisdiction, and otherwise come within the rules which regulate that jurisdiction. Appeals lie, it is conceded, from the District Courts of that State to the Supreme Court, as fully appears also from the records in these suits, which shows to a demonstration that this court possesses no power to grant any relief to the plaintiffs under the act of Congress on which these motions are founded.

MOTIONS DENIED.

Mr. Justice BRADLEY, dissenting.

I dissent, with some diffidence, from the opinion of the court, on the following grounds:

1st. That notwithstanding the act of Congress declares that a writ of error shall be a supersedeas if certain conditions are performed, the judgment of the court has the effect of leaving many classes of decrees and judgments *in equity*, though appealed from, entirely effective and operative between the parties, whereas the writ of error ought to sus-

---

* 1 Stat. at Large, 335.

pend the effect and operation thereof until the case is heard in this court.

2d. That the judgment of this court will have the effect to allow subordinate State courts to evade the supersedeas of a writ of error in all cases where the court of last resort remits the record to them for execution. The judgment of this court disclaims all jurisdiction over the acts of the subordinate State courts, and thereby, in my judgment, surrenders a very important power necessary to the effective support of its appellate jurisdiction.

3d. That the judgment of the court remits the practice on this subject substantially back to the practice of the English courts of equity, in which it is conceded that an appeal does not suspend proceedings nor act as a supersedeas on the proceedings in the court appealed from: and, in effect, departs from the act of Congress, which declares that a writ of error or an appeal in the Federal courts *shall* be a supersedeas.

4th. That the effect of the judgment of the court is to disclaim its just control over the *parties to the record.*