## LAND DEVELOPMENT CO. OF LOUISIANA, Limited, v. CITY OF NEW ORLEANS.

(District Court, E. D. Louisiana. July 8, 1926.)

No. 18345.

**1. Courts ⟷508(2).**

Limitation under Judicial Code, § 265 (Comp. St. § 1242), on power of federal courts to enjoin proceedings in state courts except as to bankruptcy, does not apply to proceedings to enforce local statute repugnant to federal Constitution.

**2. Courts ⟷508(2)—Federal court could enjoin proceedings in state court relative to ordinance creating negro and white communities on ground of alleged conflict with federal Constitution (Judicial Code, § 265 [Comp. St. § 1242]).**

Where relief under ordinance creating white and negro communities was denied, and suspensive appeal denied, and devolutive appeal only allowed, federal court could, if bill was not bad for want of equity under exceptions to Judicial Code, § 265 (Comp. St. § 1242), enjoin proceedings because of alleged conflict with federal Constitution.

**3. Injunction ⟷118(2)—Owner's allegation that ordinance creating negro and white communities interfered with use of property held to set out interest too remote to entitle it to injunction pending appeal from state case.**

Bill by owner, alleging interference with use and enjoyment of property by ordinance creating negro and white communities, *held* to set out interest too remote to entitle it to injunction, pending appeal from state case on same facts.

In Equity. Suit by the Land Development Company of Louisiana, Limited, against the City of New Orleans. On defendant's motions to dismiss. Bill dismissed.

Theo. Cotonio, of New Orleans, La., for plaintiff in error.

Francis P. Burns, Asst. City Atty., of New Orleans, La., for defendant in error.

BURNS, District Judge. Complainant, a Louisiana corporation, as owner of a city lot in New Orleans, with a dwelling house thereon, filed its bill herein on March 12, 1926, complaining that the defendant, city of New Orleans, acting under an ordinance relative to negro and white communities, is depriving it of the use and enjoyment of its property, by interfering with the renting of same to negroes, and with the occupancy of such tenants, simply because they are negroes, by threatening to arrest and prosecute the tenants for the misdemeanor defined by the ordinance, which reads as follows:

"No. 8037. Commission Council Series.

"An ordinance relative to negro and white communities.

"Whereas, Act 117 of 1912 authorizes municipalities to withhold permits for white or negro houses, under certain circumstances; and

"Whereas, Act 118 of 1924 prohibits white persons from establishing a home residence in a negro community and prohibits negroes from establishing a home residence in a white community; and

"Whereas, in the interest of public peace and welfare, it is advisable to foster the separation of white and negro residential communities: Therefore,

"Section 1. Be it ordained by the commission council of the city of New Orleans, that whenever the city engineer shall have notice or information that any person whatsoever proposes to construct a house for negroes in a white community, or portion of the municipality inhabited principally by white people, or a house for white persons in a negro community, or portion of the municipality in-

habited principally by negroes, he shall not issue a building permit for said house except on the written consent of a majority of the persons of the opposite race inhabiting such community or portion of the city to be affected.

"Sec. 2. Be it further ordained, etc., that it shall be unlawful for any white person to hereafter establish a home residence on any property located in a negro community, or portion of the municipality inhabited principally by negroes, or for any negro to establish a home residence on any property located in a white community, or portion of the municipality inhabited principally by white people, except on the written consent of a majority of the persons of the opposite race inhabiting such community or portion of the city to be affected; the aforesaid written consent to be filed of record with the mayor.

"Sec. 3. Be it further ordained, etc., that it shall be unlawful to maintain any home residence established in violation of section 2 of this ordinance.

"Sec. 4. Be it further ordained, etc., that each seven days' maintenance of any home residence established in violation of section 2 of this ordinance shall be deemed to be a separate and distinct offense.

"Sec. 5. Be it further ordained, etc., that the terms 'white community' and 'negro community' as used in this ordinance shall be taken and held to mean and embrace every residence fronting on either side of any street within three hundred feet of the location of the property involved, measured along the middle of the streets in any and all directions.

"Sec. 6. Be it further ordained, etc., that any person violating any of the provisions of this ordinance shall on conviction be punished for each offense by a fine not exceeding twenty-five dollars, or by imprisonment not exceeding thirty days, or by such fine and such imprisonment in default of payment of the fine, or by both such fine and such imprisonment, in the discretion of the court having jurisdiction.

"Sec. 7. Be it further ordained, etc., that should any provision of this ordinance be invalid, its invalidity shall not annul the other provisions of this ordinance, which shall nevertheless have the fullest effect possible in such case.

"Adopted by the commission council of the city of New Orleans, September 16, 1924."

The bill, so far as it affirms the jurisdiction, alleges that the dwelling house is valued at more than $3,000; that the ordinance is illegal, null, and void, and contrary to the Constitution and laws of the United States; that it deprives complainant of its property rights, takes its property without due process of law, and denies to complainant the equal protection of the law guaranteed by the Constitution of the United States, and especially by the Fourteenth Amendment. Otherwise the bill alleges that a similar ordinance, basing an interdiction upon color and nothing more, beyond the legitimate bounds of the police power, was held invalid and void because unconstitutional in the case of Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201, notwithstanding which the Supreme Court of Louisiana, "in utter disregard of this supreme law of the land," did hold this particular ordinance constitutional in the case of Tyler v. Harmon, 158 La. 439, 104 So. 200. The prayer is for the usual relief by injunction.

A temporary restraining order issued as prayed for, together with a rule nisi ordering the defendant city of New Orleans to show cause why a preliminary injunction should not issue. This temporary restraining order was issued, but improvidently prescribed a hearing before three judges, pursuant to section 266 of the Judicial Code (Comp. St. § 1243). However, upon consideration, I concluded that a city ordinance is not a statute of a state, within the meaning of that section. The order was accordingly modified, and the hearing proceeded in the usual course, upon the authority of Birmingham Waterworks Co. v. City of Birmingham (D. C.) 211 F. 497, as affirmed by the Circuit Court of Appeals (5th Circuit), 213 F. 450, 130 C. C. A. 96, Cumberland Telephone & Telegraph Co. v. Memphis (D. C.) 198 F. 955, and Sperry & Hutchinson Co. v. Tacoma (C. C.) 190 F. 682.

Respondent, city of New Orleans, filed two motions to dismiss, which may be considered together as one, upon the grounds, respectively, of lis pendens and a want of equity in the bill.

In support of the first contention, respondent filed a certified transcript of a record of proceedings in the civil district court for the parish of Orleans, state of Louisiana, No. 161182 of the docket of that court, entitled Land Development Co. of Louisiana v. City of New Orleans. The petition in that case was filed February 17, 1926, wherein this same plaintiff alleges substantially the same cause of action, including, inter alia, the same alleged federal question, against the same defendant, and likewise prays for injunctive relief. The record further shows

that by judgment, dated February 26, 1926, a preliminary injunction was denied, and a rule nisi discharged; that a devolutive appeal was granted by that court, returnable to the Supreme Court of Louisiana March 26, 1926, and that therefore the cause is still pending in the civil district court on the merits.

[1] Section 265 of the Judicial Code (Comp. St. § 1242) prohibits issuance of the writ of injunction by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy. This limitation upon the power of the federal courts has been in effect since 1793 (1 Stat. 333–335) as R. S. § 721 (Comp. St. § 1538). It was held to apply to the Supreme Court as well as the federal nisi prius courts. Slaughter House Cases, 10 Wall. 273, 19 L. Ed. 915. It has been held to extend to any order which indirectly stays state court proceedings. Western Union Tel. Co. v. L. & N. R. R., 218 F. 628, 134 C. C. A. 386. However, there are exceptions well recognized, and applied as settled law, in cases where the federal court has acquired jurisdiction first, so that it may, in such cases, enjoin suits subsequently brought in state courts, and in proceedings to enforce local statutes which are repugnant to the Constitution of the United States.

[2] Since the instant case is not an ordinary action depending for jurisdiction upon a diversity of citizenship, but invoking the jurisdiction of this court upon the existence of an alleged federal question, the case is analagous and nearly identical with that decided by Lowell, D. J., in General Outdoor Advertising Co., Inc., et al. v. Williams (D. C.) 9 F.(2d) 165, whose reasons for dismissing the bill in that case are highly persuasive here. In that case, however, the state court ordered a stay of proceedings pendente lite, whereas, in the instant case, no such stay was granted. Here a preliminary injunctive relief was denied, a suspensive appeal denied, and a devolutive appeal only was allowed, returnable to the Louisiana Supreme Court. Under such circumstances, if a cause of action is well pleaded, or, in other words, if the bill is not bad for want of equity, the plaintiff is entitled to preliminary relief, since this court has power, under the exceptions to the statute above stated, to enjoin state officials or intervene in either civil or criminal proceedings in state courts in cases where the validity of a statute or ordinance under the federal Constitution is called in question. See Hygrade Provision Co. v. Sherman, 266 U. S. 497, 45 S. Ct. 141, 69 L. Ed. 402, and other cases cited by Judge

Lowell, and also his citation of cases to the effect that this power is to be applied sparingly and only in cases coming clearly within the exceptions to the restrictions provided for by section 265, Judicial Code.

[3] Coming to the second contention made by the motion to dismiss, it is to be noted that the plaintiff corporation does not declare itself composed of other than persons of the white race or of being discriminated against because of the color of its officers and stockholders; nor is it charged that the ordinance deprives it of any right in or to its property, except only the right to rent it to third persons who are negroes.

The alleged interference with plaintiff's right to rent to such tenants is set out in vague, general terms. It does not charge a specific interference or threatened interference by the defendant, city of New Orleans, with its right under any specific contract of lease to any specific tenants. In lieu of allegations materially necessary to show a right to equitable relief, or to state a cause of action, an excerpt from a decision of the Supreme Court, in the case of Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201, is set forth and compared argumentatively with a decision of the state Supreme Court in Tyler v. Harmon, 158 La. 439, 104 So. 200.

So too, there is but a vague suggestion of complainant's clear right to obtain relief by injunction. If the case had been filed by a negro tenant, whose right to occupancy of leased property was in jeopardy, the right to claim equitable relief would more clearly appear. There is presented here, however, what, in effect, amounts to a vicarious appearance by the owner of property, who seemingly pretends to champion the rights of undisclosed third persons, vaguely asserting, in itself, a right that is so doubtful that a court of equity should not assume to enforce or defend it by injunction. Complainant's interest seems too remote to give it a standing in court for such purpose. Board of Liquidation v. McComb, 92 U. S. 536, 23 L. Ed. 623.

In Truly v. Wanzer, 5 How. 142, 12 L. Ed. 88, the Supreme Court quoted an earlier decision which might be aptly repeated here:

"There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction. It is the strong arm of equity, that never ought to be extended, unless to cases of great injury," etc.

These considerations seem peculiarly ap-

plicable to a case such as this, where the necessary effect of an injunction will be to arrest the orderly processes of a state court, to which the plaintiff has previously voluntarily applied for relief, and through which, in due course, the cause may proceed to the Supreme Court to final determination.

The bill here presented, under the circumstances stated, does not suffice to justify the granting of a stay of proceedings, either in the state courts, or here. To allow such a suit would amount to an officious interference with the orderly processes of the state courts.

The bill will be dismissed at plaintiff's cost, and a decree entered accordingly.