JOHN T. BIRD, HENRY C. PITNEY, JOHN R. EMERY AND
ALFRED REED, VICE-CHANCELLORS.

---

NATIONAL DOCKS &c. RAILROAD COMPANY

*v.*

PENNSYLVANIA RAILROAD COMPANY et al. and EDWARD F.
BROOKS.

1. An appeal from the court of chancery is without effect upon the subsequent proceedings in a cause there pending, while it remains undetermined, except it be taken from a final decree within ten days after the decree is signed, in which case it stays process in execution of the decree unless order be made to the contrary. If other relief against a final decree, while the appeal is undetermined, be necessary or proper, it must be had by order of this or of the appellate court.

167

2. The mere existence of an appeal from a final decree does not affect the inherent validity and force of that decree. If the decree is itself an injunction, that injunction remains in force after the appeal, and must be obeyed, unless this or the appellate court shall order a suspension of its effect.

3. In enforcing obedience to an injunction from a corporation, sequestration may be resorted to.

On petition and order to show cause why the defendants shall not be adjudged to be in contempt for non-obedience to the decree of this court herein, and punished.

The complainant, by condemnation, has acquired the right to cross a car yard of the defendants, nearly at right angles to twenty-one railroad tracks laid therein, by means of an arched masonry passageway beneath the surface of the yard. The parties having failed to agree as to the manner in which the work of constructing that arched passageway shall be executed, the aid of this court was invoked to regulate the enjoyment of their respective rights in that respect.

The suit has been prosecuted to final decree, signed on the 28th of January, 1896, by which, among other things, it was ordered

" that the defendants be and they hereby are enjoined and restrained from obstructing the complainant in the construction of its railroad and arch upon the route of complainant according to the plan and in the manner set forth in the order of amendment of the Hudson circuit court dated September 30th, 1893, and in the statement filed July, 11th 1895, in the office of the clerk of said court, copies of which are annexed to the bill, marked exhibits B and L respectively, and from placing or maintaining any cars within the route of complainant upon defendants' yard tracks one, two and three, being the most southerly of the yard tracks in the car yard of defendants covered by complainant's route, until the complainant shall have completed its arch across said tracks " &c.

From this decree the defendants duly appealed, within ten days from its date.

On the 29th of January the defendants having first given notice of their appeal from the decree, through their superintendent, Edward F. Brooks, removed some baggage cars which for some time theretofore had been standing upon their yard

track number " one," over the route of the complainant's cross-
ing, and deliberately moved five flat cars loaded with heavy pieces
of rock to the place thus vacated, and maintained them there,
having in readiness implements to enable the employes of the
defendant companies to throw the rocks into any excavation
the complainant might make, and thus obstruct the erection of
the complainant's tunnel. The flat cars were thus maintained
until the complainant's workmen undermined the tracks upon
which they were placed and some of them fell into the excava-
tion, but the defendants did not throw the rocks from them.
The defendants have also, since the making of the decree, main-
tained passenger cars on their tracks " two " and " three " at the
place of the complainant's crossing.

Because of this conduct the complainant seeks to have the
defendants adjudged to be in contempt for violation of the
injunctive provisions of the decree, and punished.

*Mr. Charles D. Thompson* and *Mr. Charles L. Corbin,* for the
complainant.

*Mr. James B. Vredenburgh, Mr. Richard V. Lindabury* and
*Mr. Frank Bergen,* for the defendants.

THE CHANCELLOR.

The decree prescribes the manner in which the construction
of the arched-tunnel crossing of the defendants' yard is to be
executed, restrains the defendants generally from obstructing
such execution, and enjoins them particularly from placing or
maintaining cars on their tracks at points in the route of cross-
ing at which the complainant may, under the plan of construc-
tion, from time to time be proceeding with its work.

The design of such injunction is to give the complainant pos-
session of the route of crossing for the purpose of constructing
its tunnel in the manner sanctioned by the decree. It is restrict-
ive in that it forbids interference, and it is mandatory in effect
in its requirement that maintenance of existing obstructions, in
the shape of cars upon the tracks to be crossed, shall cease.

The defendants have disputed, and in their appeal propose yet to dispute, the lawfulness of the method of constructing the tunnel which the decree prescribes. Their argument is that such method permits the severance of several of the car tracks in the yard at a time during the progress of the work, and thus sanctions the temporary putting of a portion of the yard into disuse, when, in fact, it is possible for the complainant, at additional expense, to accomplish the construction without severing any of the tracks. Therefore, such severance and the consequent deprivation of the use of part of the yard is unnecessary, and hence an unlawful interference with them in the exercise of their franchises.

In answer to this application they insist that the appeal operates as a *supersedeas* of the injunctive provisions of the decree, so that pending the determination of the appeal no movement may be made by the complainant under the protection of the decree, and they are not restrained from resisting any attempt upon the complainant's part to prosecute the construction.

In absence of any statutory regulation or established practice or court rule of our own, the English practice has always prevailed in this court. *West* v. *Paige, 1 Stock. 203; Schenck* v. *Conover, 2 Beas. 33; Ratzer* v. *Ratzer, 2 Stew. Eq. 162; Hitchcock* v. *Rhodes, 15 Stew. Eq. 495.*

In *Hovey* v. *McDonald, 109 U. S. 150*, Mr. Justice Bradley, who, it is remembered, at one time was an eminent practitioner in this court, said : " In England, until the year 1772, an appeal from a decree or order in chancery suspended all proceedings, but since that time a contrary rule has prevailed there. The subject was reviewed by the house of lords in 1807 [*15 Ves. 184*], and an order was made establishing the right of the chancellor to determine whether and how far an appeal should be suspensive of proceedings subject to the order of the house on the same subject."

Our cases recognize the later English rule, modified somewhat by court rule, as prevailing in this court.

" By the practice of the English court of equity," said Chancellor Green in *Conover* v. *Schenck, supra,* " as well as by the

Nat. Docks R. R. Co. *v.* Penna. R. R. Co.

practice of this court so far as regulated by statute, an appeal from a decree in equity, either interlocutory or final, does not stay proceedings in the case below or prevent the issuing of process without a special order for that purpose."

In the earlier case of *Doughty* v. *Somerville and Easton Railroad, Co., 3 Halst. Ch. 629,* the same distinguished judge, then chief-justice, sitting in the court of errors and appeals, said; " By the ancient practice it was held that an appeal from a court of equity stayed all further proceedings in the court below; but by the modern English practice, the appeal does not stay proceedings, but an order for that purpose must be obtained in the court of chancery or in the house of lords. * * * By our practice, an appeal from an interlocutory decree does not stay proceedings except by an order of this court or the court of chancery for that purpose. If an appeal from a final decree be filed in ten days, it prevents issuing process on the decree. *Rules Ct. Ch., Rule XX.*"

The rules of the court of chancery in force when Chief-Justice Green thus wrote are to be found in Potts' *Chancery Precedents,* published in 1841. They are as follows:

## " XX. OF APPEALS.

" 1. In case of an appeal from an order or interlocutory decree, the appeal shall not stay proceedings thereon without an order of this court or of the court of appeals for that purpose first had, and upon complying with such terms as the court making the order to stay proceedings may impose.

" 2. In case of an appeal from any final sentence or decree, if the party appealing shall, within ten days after such final sentence or decree, file his appeal with the clerk of this court, it shall prevent issuing process on the said decree without the order of this court or of the court of appeals first had and obtained for that purpose."

The rules to-day are, in substance, the same. They are:

" 149. An appeal from an interlocutory decree or order shall not stay proceedings in the cause without an order of this court or of the court of appeals for that purpose first had, which order shall be granted upon such terms as the court making it may impose.

" 150. If the party appealing from a final decree shall, within ten days after the filing of such final decree, file his appeal with the clerk of this court, process shall not issue on said decree without the order of this court or of the court of appeals."

It appears, then, to be clear that the mere taking of an appeal from this court is without effect upon subsequent proceedings in the cause, except it be taken from a final decree within ten days after the decree is made, and then it stays process in execution of the decree unless order be made to the contrary.

If other. relief against the decree, pending the determination of the appeal, be necessary or proper, it must be had by order of this court or of the appellate tribunal.

Moreover, I find no warrant for the insistment that the mere existence of an appeal suspends or in any manner affects the present inherent validity and force of the decree appealed from. The person in whose favor it is rendered is denied process to enforce it, and that is all. Consequently, where the decree is itself an injunction, that injunction is in force and must be obeyed, unless, to continue the *status·quo* of the parties pending the determination of the appeal, this court or the court of errors and appeals shall order a suspension of its effect. And it is not necessary to issue a writ to bind the parties to the suit to obedience to such a decree. Being before the court, they are bound, at their peril, to take notice of the provisions· of any decree rendered in due course upon the issues tendered. *Hawkins* v. *State, 126 Ind. 296.*

I find that the great weight of authority throughout the country, where statutes, similar in effect to our rules prevail, accords with this view.

In the case of *Hovey* v. *McDonald,* already cited, the decree directed a receiver to deliver certain funds to the defendants. After appeal had been duly taken, the receiver obeyed the decree, and question arose in the United States supreme court, whether the appeal had operated as a *supersedeas* so that the decree should not have been obeyed, and the court held that it had not. ·

Mr. Justice Bradley, in the opinion of the court, said : " But the decree itself, without further proceedings, may have an intrinsic effect which can only be suspended by an affirmative order either of the court which makes the decree or of the appellate tribunal." He instances the decision of the United States supreme court in the *Slaughter House Cases, 10 Wall. 273,* where

it was held that appeal from a decree granting, refusing or dissolving an injunction does not disturb the operative effect of the decree, and in which Mr. Justice Clifford said : " It is quite certain that neither an injunction nor a decree dissolving an injunction, passed in a circuit court, is reversed or nullified by an appeal or writ of error before the cause is heard in this court."

In the New York court of appeals, in the case of *Sixth Avenue Railroad Co.* v. *Gilbert Elevated Railroad Co., 71 N. Y. 430,* a judgment forbade the appellant from proceeding with the construction of its railroad.   An appeal was perfected and an order was obtained staying execution upon the judgment, and then the appellant, notwithstanding the restraint of the judgment, having tied up its affirmative enforcement, proceeded with the erection of its road, the thing forbidden by the judgment.   A judge at chambers thereupon ordered the appellant to show cause why it should not be held to be in contempt.   The general term of the supreme court vacated the order, and its action was carried to the court of appeals, where the appeal was dismissed, because the action of the general term appeared to have been put upon the ground of exercise of judicial discretion and not upon the ground of want of power, and therefore was not appealable.   But in the court's opinion, Judge Allen discussed the subject we consider, taking views which have commanded general approval throughout the country.   He said : " By the appeal, with a stay of proceedings on the part of the plaintiff in execution of the judgment, the judgment was not annulled or its obligations upon the defendant impaired, but its ' *execution* ' was stayed—that is, the plaintiff was prohibited from issuing process in execution of it. The order of the judge was in substantial compliance with the statute, and stayed all proceedings on the part of the plaintiff in execution of the judgment.   But this did not affect the validity or effect of the judgment pending the appeal, so far as it bore upon and restrained the action of the defendant, its servants or agents.   It did not absolve them from the duty of obedience and permit them to do that which the judgment absolutely prohibited, and the doing of which would cause irreparable mischief to the plaintiff or an injury which could not certainly be compensated in damages."

To the same effect are the cases of *Gardner* v. *Gardner, 87 N. Y. 18*, and *Genet* v. *Delaware and Hudson Canal Co., 113 N. Y. 475*. In the latter of these cases, Mr. Justice Andrews said : " The judgment in this case prohibits the defendant from using its structures on the plaintiff's lands in the way in which it had been accustomed to use them for several years, and from depositing culm on the surface. It adjudges the right as claimed by the plaintiff, and denies the adverse claim of the defendant. The judgment operates, of its own force and without further process, as a prohibition against doing the act enjoined. The appeal does not of itself relieve the defendant from the duty to obey the judgment."

In Indiana the same doctrine is maintained in well-considered deliverances. *Central Union Telephone Co.* v. *State, 110 Ind. 203; Hawkins* v. *State, 126 Ind. 296*. And in *State, ex rel. Busch,* v. *Dillon, 96 Mo. 56*, where the effect of the statutory provision is that a perfected appeal should stay execution and all further proceedings upon the judgment appealed from, Mr. Justice Brace said : " Our law regulating practice in injunction and appeals is essentially the same as that prevailing in the federal courts and those of other states, and the overwhelming weight of authority is that injunctions ordered on final hearing on the merits are not vacated by an appeal from that decree. A stay of proceedings, from its nature, operates only on orders and judgments commanding some act to be done and does not reach injunctions."

The wisdom of this limitation upon the effect of an appeal, and requirement of a special order to suspend the injunctive force of a decree, is conspicuous when we regard the infinite variety of situations which command the exercise of the injunction power in the administration of justice, and consider that it is impossible to formulate any uniform scheme of suspension by the appeal alone which may not be used as an instrument of grievous injustice. Each case must be submitted to judicial discretion.

There is no doubt as to the power of the courts, original and appellate, to ascertain and, by order in furtherance of justice, to preserve the *status quo* pending appeal.

In *Hovey* v. *McDonald,* Mr. Justice Bradley said, upon this subject, "this power undoubtedly exists, and should always be exercised when any irremediable injury may result from the effect of the decree as rendered."

So, also, it is affirmed in *Genet* v. *Delaware and Hudson Canal Co., 113 N. Y. 475,* and *New Brighton &c. Railroad Co.* v. *Pittsburg &c. Railroad Co., 105 Pa. St. 13, 23.*

Upon the facts presented by the complainant's petition in the present matter there is no question as to the defendants' disobedience of the injunctive provisions of the decree. Not only have they failed to desist from maintaining cars upon the tracks specified in the decree, but they have affirmatively substituted for cars which were upon one of the tracks when the decree was made, others more obstructive of the work which the decree permits. Their disobedience has consisted of not only negative omission, but also of active commission. The facts charged are not denied. Refuge is taken in the advice of counsel, which was in accordance with the insistment here, that the appeal suspended the force and effect of the decree, and a disavowal upon the part of Mr. Brooks of any intent to contemn or defy the authority of the court. The defence is available as tending to eliminate the criminal features of the contempt and to mitigate punishment, but it does not change the fact of disobedience and existence of at least constructive contempt.

Consideration of the action to be taken by the court remains. Should it inflict punishment, and proceed, as the complainant asks, by sequestration or otherwise, to enforce obedience to its decree?

It is argued that in the present situation of affairs such action would be equivalent to an order that process shall issue to enforce the decree. It is true, resort to sequestration, which appears to be a proper method of securing obedience in case of corporate disobedience (*United States* v. *Memphis &c. Railroad Co., 6 Fed. Rep. 237, 239; Thompson* v. *Pennsylvania Railroad Co., 3 Dick. Ch. Rep. 105, 110; Spokes* v. *Branbury Board of Health, L. R. 1 Eq. 42; Attorney-General* v. *Great Northern Railroad Co., 15 Jur. 387; Attorney-General* v. *Birmingham &c. Board, 17 Ch.*

*Div. 685, 693*), would lead to the enforcement of the decree, and also that punishment by fine or otherwise, leaving the decree in force, would be a step in the same direction ; but when the court's decree is disregarded or deliberately defied, is the punishment of the contemner to be withheld because it may operate to deprive him of an advantage which the court's rules of procedure give him ?    The contrary has been held, even where the issuance of process in enforcement of a decree is forbidden by statute (*Sixth Avenue Railroad Co.* v. *Gilbert Elevated Railroad Co.,* and *State, ex rel. Busch,* v. *Dillon,* above cited), the proceedings in attachment being regarded as independent and *quasi*-criminal. And this is the true rule, otherwise the decree of the court would practically be a nullity from the time the appeal is taken until it shall be determined.

In the argument of this matter the defendants' counsel distinctly declared that they did not ask for the suspension of the injunctive force of the decree, that they denied the operative force of the decree, and rested upon that position alone.

In this attitude of affairs I deem it to be my duty, in meting out punishment, not only to so act as to rebuke the at least constructive indignity to the court, but also to do that which will insure obedience to the decree in respect to the complainant's right under it.   *2 Bish. Cr. L.* § *269.*   The injunctive power of the decree remaining in force, such action is necessary to its adequate protection, and must be taken, notwithstanding its effect may be the enforcement or partial enforcement of the decree. Doubting the efficacy of a mere fine to accomplish more than punishment for the offence against the court itself, because of the defendants' preparation and manifest disposition to resist the complainant's progress by force, I feel constrained to also resort to sequestration.   I will fine each of the defendants $10, to be paid to the clerk for the use of the state, in accordance with the requirements of the statute (*Rev. p. 123* § *103*), and I will direct the issuance of a commission of sequestration, limited to the car yard in question and the goods and chattels of the defendant companies while therein, to the end that they be so controlled that future interference with the prosecution of the work.

permitted by the decree shall be prevented; which commission shall continue in force until the crossing shall be built, unless otherwise directed by order of the court, but, as I am reluctant to believe that the defendants will not immediately give satisfactory assurance of obedience to the decree, which may induce me to revoke the direction for sequestration, the issuance of the commission will be withheld for thirty days.